JOSEPH ATWATER, Appellant, *v.* THE TRUSTEES OF THE
VILLAGE OF CANANDAIGUA, Respondents.

Municipal corporations, engaged in the performance of works of a public
nature authorized by law, are not liable for consequential damages.
occasioned thereby to others, where private property is not directly
encroached upon, unless such damages are caused by misconduct, negli-
gence or unskillfulness.

Where, therefore, defendant, while engaged in building a bridge, in pur-
suance of statutory authority, erected a coffer-dam in the outlet of a
lake, which was necessary for the work, which obstructed the flow of
the water from the lake and caused it to remain on plaintiff's land, and
substantially deprived him of its beneficial use for one season, *held*, it
appearing that the work was properly and expeditiously done, that.
defendant was not liable for the damages; that there was not a taking
of plaintiff's property within the meaning of the constitutional pro-
vision prohibiting such taking without compensation.

*St. Peter* v. *Denison* (58 N. Y. 416); *Pumpelly* v. *Green Bay Co.* (13 Wall.
166), distinguished.

Also *held*, that the time and the necessity for the construction were·
matters to be determined by defendant, and in the absence of proof of
bad faith, the exercise of this discretion was not the subject for review.

Reported below (56 Hun, 293).

(Argued March 4, 1891; decided April 21, 1891.)

APPEAL from judgment of the General Term of the Supreme·
Court in the fifth judicial department, entered upon an order
made March 25, 1890, which· overruled exceptions ordered to
be heard there in the first instance, denied a motion for a new
trial and directed judgment on a verdict in favor of the·
defendants.

The plaintiff's complaint alleged that in March, 1888, the·
defendants wrongfully, negligently and carelessly erected a.
coffer-dam in the outlet of Canandaigua lake, at the foot of
Main street, in the village of Canandaigua, and maintained it
there, by which the water of the lake was backed upon and
over his pasture land, causing damage for which a recovery
was sought.

The defendants, admitting the existence of the dam, put in issue those allegations in other respects and alleged matter in justification.

It appeared that at the time in question there were two outlets of the lake, one of them known as the DuBois outlet, and the other, west of it, known as the feeder, which was made by the Ontario Hydraulic Company in 1856, pursuant to authority given by Laws of 1855, chapter 234. This new channel was made to supply water to mills below, and connected with the old channel one and a half miles from its mouth. Across these outlets and along near the lake shore was a highway or street, known as Lake road, which, at the foot of Main street, came into the latter. By chapter 658, Laws of 1886, the defendants, for the purpose of obtaining drainage and sewerage for the village and to drain and reclaim wet and swamp lands, were empowered to construct a public sewer along the bed of the outlet and the new channel constructed by the Hydraulic Company, and for that purpose to take and appropriate, in the manner provided, the right to use and occupy such outlet and new channel, with such lands as should be necessary to carry out those purposes, but the rights and privileges granted it was provided should be so exercised that the waters of the lake should be maintained at a height not less than ordinary low water mark. And for the purpose of maintaining the water at proper level the defendants were authorized to erect and maintain in the outlet and such new channel locks or bulk-heads, with gates, etc., to so control and regulate the discharge of the waters of the lake as to comply with the provisions of the act. In 1887 the defendants acquired the interest and right formerly had by the Hydraulic Company to regulate and control the flow of water into and through the new channel or feeder and the right to occupy its bed for such sewerage and drainage, with the right of way along the banks, etc. In March, 1888, with a view to the construction of a bridge in the highway across this channel and in combination with it bulk-heads and gates, the defendants caused to be erected a coffer-dam, and thereafter proceeded to construct the bridge

in the place of an old one, which was in a dilapidated condition. The coffer-dam remained there until in August, when the use for it in the construction of the bridge was accomplished and the dam was removed. The cause of the plaintiff's complaint was that the effect of the dam was to hold back the water of the lake and cause it to remain on his low pasture land situated up the lake a quarter of a mile distant from the dam. The court directed a verdict for the defendants.

Further facts appear in the opinion.

*William H. Smith* for appellant. The court was not justified in ordering a verdict for the defendants. (2 Rumsey's Pr. 294; *Bagley* v. *Bowe,* 105 N. Y. 171; *Brown* v. *Bowen,* 30 id. 537; Laws of 1886, chap. 658; Laws of 1855, chap. 234; 35 N. Y. 525; Angell on Watercourses [6th ed.], § 331.) Conceding, as it must be, that there was evidence for the jury that the cause of injury to plaintiff's land was the coffer-dam, the plaintiff had the right to have the evidence submitted to them. (*Radcliff* v. *Mayor, etc.,* 4 N. Y. 200; *Lansing* v. *Smith,* 4 Wend. 9; 14 Barb. 405; *N. T. Co.* v. *City of Chicago,* 99 U. S. 336, 377; *Uline* v. *N. Y. C. & H. R. R. R. Co.,* 101 N. Y. 106; *Henderson* v. *N. Y. C. R. R. Co.,* 78 id. 423; *Williams* v. *N. Y. C. R. R. Co.,* 16 id. 100; *Story* v. *N. Y. E. R. R. Co.,* 90 id. 122; *Mahady* v. *B. R. R. Co.,* 91 id. 148; *Coggswell* v. *N. Y., N. H. & H. R. R. Co.,* 103 id. 10; Const. N. Y. art. 1, § 6.) The flooding of plaintiff's land was a taking of private property, within the meaning of the Constitution. (*Pumpelly* v. *G. B. Co.,* 13 Wall. 156; *Brown* v. *Bowen,* 30 N. Y. 537; *Radcliff* v. *Mayor, etc.,* 4 id. 95; *Mahady* v. *B. R. R. Co.,* 91 id. 148; *Coggswell* v. *N. Y., N. H. & H. R. R. Co.,* 103 id. 10; *Scriver* v. *Smith,* 100 id. 471; Lewis on Em. Domain, § 67.) The claim by respondents that the land was only taken for a temporary purpose, and, therefore, they are not liable, cannot be sustained. (*Williams* v. *N. Y. C. R. R. Co.,* 16 N. Y. 100; *Wynehamer* v. *People,* 13 id. 378, 433; 1 Black. Comm. 138; 2 Austin on Juris. [3d. ed.] 817, 818, 836; *Walker* v. *O. C. W. R. R. Co.,* 103

Mass. 10, 14; Lewis on Em. Domain, § 58; Cooley on Const.
Lim. 674; *M. W. W. Co.* v. *Sharpstein,* 50 Cal. 284; *St. Peter*
v. *Denison,* 58 N. Y. 416.)    Assuming the defendants acted
under sanction of legislative authority, and that the injury
received by the plaintiff was without remedy had the legisla-
ture authorized the act, then the defendants are liable, as they
exceeded the authority granted them.    (*Wheeler* v. *Spinola,*
54 N. Y. 385; Laws of 1888, chap. 658, § 1.)    The legislature
could not give defendants any authority to take private prop-
erty without compensation.    (Lewis on Em. Domain, §§ 66,
67, 69, 70, 71, 104; *Perry* v. *Worcester,* 6 Gray, 544; *Smith*
v. *City of Rochester,* 92 N. Y. 463.)    Assuming that the
defendants in constructing the dam in question were engaged
as public officers in constructing a bridge in the public high-
way in the village, and were engaged in constructing the
bulk-head and gates, provided for by chapter 658 of the Laws
of 1886, under the authority of the legislature, that the coffer-
dam was a necessity in the prosecution of the work, and was
not maintained for an unnecessary time for the completion of
the work, yet there was negligence and want of care, and the
defendants are liable for this reason.    (*Bellinger* v. *N. Y. C.
R. R. Co.,* 23 N. Y. 47; *Losee* v. *Buchanan,* 51 id. 480.)
The trustees were not compelled to build the bridge.    (Laws
of 1887, chaps. 513, 514, § 27; Laws of 1854, chap. 352, § 1;
Laws of 1884, chap. 308.)

*Thomas H. Bennett* for respondents.    The legislature hav-
ing conferred rightful authority upon the defendant by statutes
to execute the public improvements in question, no action will
lie in favor of the plaintiff, a riparian owner on the shores of
Canandaigua lake.    If the plaintiff, under such circumstances,
has received any injury whatever, it is *damnum absque injuria.*
(*Jermaine* v. *Waggoner,* 7 Hill, 357; *Radcliff* v. *Mayor, etc.,*
4 N. Y. 195; *Corey* v. *B. U. & N. Y. R. R. Co.,* 23 Barb.
482; *Ely* v. *City of Rochester,* 26 id. 133; *Sweet* v. *City of
Troy,* 62 id. 630; *Bellinger* v. *N. Y. C. R. R. Co.,* 23 N. Y.
42; *Moyer* v. *N. Y. C. & H. R. R. R. Co.,* 88 id. 356; *Uline*

v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 107, 108; *Cudde-back* v. *D. & H. C. Co.*, 20 Wkly. Dig. 454; *Lansing* v. *Smith*, 8 Cow. 146; 4 Wend. 9; *Callender* v. *Marsh*, 1 Pick. 417; *Green* v. *Reading*, 9 Watts, 382; *O'Connor* v. *Pittsburg*, 18 Penn. 187; *Smith* v. *Washington*, 20 How. [U. S.] 135.) The coffer-dam was lawfully placed where it was, and having thus been, the defendant is not responsible for having ·erected and maintained it while discharging a duty imposed upon it by the legislature, the obstruction not having been permanent or unreasonably prolonged. (*Plant* v. *L. I. R. R. Co.*, 10 Barb. 26; *N. T. Co.* v. *City of Chicago*, 99 U. S. 635; *Cummings* v. *City of Seymour*, 79 Ind. 491.) Although it were possible for the court, upon the evidence, to arrive at the conclusion that the plan of constructing the bridge, bulkheads and gate, by means of the coffer-dam, was defective, and that the water flowing through the channel could have been carried off while the work was in progress, still the defendant is not liable for incidental injuries occasioned by its adoption. (*Ely* v. *City of Rochester*, 26 Barb. 133; *Urquhart* v. *City of Ogdensburg*, 91 N. Y. 67, 70, 71; *Watson* v. *Kingston*, 114 id. 88; *Rutherford* v. *Village of Holley*, 105 id. 632; *Heiser* v. *Mayor, etc.*, 104 id. 68; *Saulsbury* v. *Village of Ithaca*, 94 id. 27; *Lansing* v. *Toolan*, 37 Mich. 152; *Detroit* v. *Beckman*, 34 id. 125; *Monk* v. *Town of New Utrecht*, 104 N. Y. 552, 561; *Lynch* v. *Mayor*, 76 id. 60; 2 Dill's Mun. Corp. [4th ed.] § 1046.) Although the plaintiff may have been deprived of the use of a portion of his premises, temporarily, while the structure was being erected and the coffer-dam necessarily maintained, it was not a taking of plaintiff's property within the Constitution. (*Radcliff* v. *Mayor, etc.*, 4 N. Y. 195; *Bellinger* v. *N. Y. C. & H. R. R. R. Co.*, 23 id. 42; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98; *N. T. Co.* v. *City of Chicago*, 99 U. S. 635; *Barnes* v. *S. S. R. R. Co.*, 2 Abb. [N. S.] 415; Cooley's Const. Lim. [3d ed.] ·541; *Pumpelly* v. *G. B. & M. C. Co.*, 13 Wall. 166.) In order to give the plaintiff any right to the unobstructed flow of water through the channel, he must have uninterruptedly

enjoyed such right under a claim of right, adversely to the
owners thereof, for a period of twenty years. (Angell on
Watercourses, § 206.) The powers and duties conferred upon
the defendants by chapter 658 of the Laws of 1886, and also
by chapter 352 of the Laws of 1854, were strictly and exclu-
sively of a public nature, and to be exercised by the municipal
corporation as the agents of the public. (*Bailey* v. *New York*,
3 Hill, 531, 539–541 ; 2 Den. 433, 450, 451 ; *Fleming* v. *Vil-
lage of Suspension Bridge*, 92 N. Y. 368; *People ex rel.* v.
*Civil Service*, 3 How. [N. S.] 40, 43, 44, 47; *Oliver* v.
*Worcester*, 162 Mass. 489.)

BRADLEY, J. It was within the power of the defendants to
construct the bridge and bulk-heads with gates at the place
where the work was located and performed. The trustees of
the village of Canandaigua were commissioners of highways
in and for the village, having the powers of such commis-
sioners (L. 1854, ch. 352, § 1), and in the construction of the
bridge they were proceeding pursuant to authority, and in the
performance of their duty. The coffer-dam placed in the
channel was necessary to the construction of the bridge. It
had the effect to stop the flow of water from the lake through
the channel known as the feeder, and the only outlet for it
during the time the dam remained there was through the
DuBois channel. There was evidence tending to prove that
from the time of the removal or opening in February, 1888,
of the Chapinville dam (located about four miles from the
lake) the DuBois outlet had the capacity to take from the lake,
and did carry off as much water or more than previously
flowed through both channels. This fact was controverted,
and the conclusion was warranted that the coffer-dam had the
effect to obstruct the discharge to some extent of the quantity
of water, when high in the lake, which the two channels had
been accustomed to carry off before the removal of the dam,
and that the continuance of water on the plaintiff's land longer
than it otherwise would have remained there was attributable
to the coffer-dam. While the water was no higher and covered

no more of this land that spring than it had years before, and was not so high as in the spring of 1887, it remained on the plaintiff's pasture field longer, and it was the continuance of it there which impaired the usefulness of the land and substantially deprived him of the beneficial use of it that season. The question, therefore, is whether or not the alleged justification is a defense against liability of the defendants for injury suffered by the plaintiff. The Hydraulic Company took, by statute (L. 1885, ch. 234), the right to maintain bulk-head and gates in the channel subject to "liability for all damages occasioned thereby actually sustained by any person whatsoever." The mere acquirement of the rights of that company afforded no means of protection of the defendants against liability for injury occasioned by the use of the privileges to which they succeeded. Nor can they be relieved unless their rights were superior to those of persons engaged in work private in character. The doctrine, however, is well established in this state, that public officers lawfully employed in making public improvements, and corporations engaged in the performance of work of a public nature authorized by law, are not liable for consequential damages occasioned by it to others unless caused by misconduct, negligence or unskillfulness. (*Radcliff's Executors* v. *Mayor, etc.,* 4 N. Y. 195 ; *Bellinger* v. *N. Y. C. R. R. Co.,* 23 id. 42 ; *Moyer* v. *N. Y. C. & H. R. R. R. Co.,* 88 id. 351 ; *Uline* v. *N. Y. C. & H. R. R. R. Co.,* 101 id. 98.) And such is the weight of authority elsewhere. (*Transportation Co.* v. *Chicago,* 99 U. S. 635, 641.)

By virtue of these lawful powers the trustees, as commissioners of highways, were authorized to construct the bridge, and the power was conferred upon them by statute to erect bulk-heads and gates to regulate the flow of water in the channel, which the municipal corporation had appropriated for the purposes of sewerage and drainage. (Laws 1886, ch. 658.) And they had the lawful authority to do whatever was essential to the proper performance of the work of making the improvement. It was for that purpose only that the cofferdam was erected. The necessity for it made it lawful, and its

usefulness was dependent upon the obstruction by it of the flow of water in the channel at the place where the improvement was made. The necessary consequence was to hold back the water which would otherwise have gone through this one in excess of that which passed down the other channel during the time the coffer-dam was there.

It is urged on the part of the plaintiff that the damages were incurred by the direct and physical invasion of his land by the defendants in the construction of the dam, and that it constituted a taking of his property within the meaning of the provision of the Constitution, that private property shall not be taken for public use without compensation. This subject has had much discussion and judicial consideration, and that consequential damages to property of others occasioned by the performance of public work are not treated as the taking of it within the meaning of the Constitution, is not an open question in this state, as will appear by reference to the cases before cited. The dam did not, nor did any of the work, encroach upon the plaintiff's premises. The right to construct this dam and thus obstruct the flow of water in that channel to the prejudice of owners of property affected by it, depended upon its necessity for the purpose of the work of the public improvement according to the plan devised for the structures to be erected. And, assuming as we do, for the purpose of the question now under consideration, that it was such, and that they properly and expeditiously performed the work, it is not seen within the doctrine before stated how the defendants can be held liable for the consequences resulting from it to others. Within this rule serious injury to property may be occasioned by the lawful exercise of powers of public character pursuant to law, and if the work is carefully and skillfully performed, the consequences may be *damnum absque injuria* when the legislature has provided for no compensation. In such case the protection of the owner of property not taken or appropriated, which may be subjected to hazard of injury, is in the care and skill to be observed by those engaged in the execution of the work. If they fail to do that, they are liable for the consequences of such failure.

In the present case the action of the defendants in the performance of the work was confined within the limits where they had the right to execute it, and the effect upon property beyond those bounds resulting in damages was the consequence of such performance of the work, and not the direct act of its execution by them. In that respect this case is distinguishable from that of *St. Peter* v. *Denison* (58 N. Y. 416). There the defendant was held liable because, by casting stone upon the premises, he committed a trespass; and the fact that he was engaged in the performance of a public work and the fragment of rock was in the process of blasting thrown upon the land of another, was no justification. Here the injury to the plaintiff's premises was not done directly by any act of the defendants, but it was the consequence following and tracable to the work as the cause. In the one case the act of the party was, and in the other not, a direct invasion of the premises of the plaintiff. The distinction between the principle of the *Radcliff* and *Bellinger* cases and the *St. Peter* case is recognized by Judge FOLGER in the latter. The dam was but a temporary structure, essential to make the public improvement, and was removed when that was accomplished. The damages so resulting from such cause have quite uniformly been treated as furnishing no common-law remedy. (*Plant* v. *L. I. R. R. Co.*, 10 Barb. 26; *Matter of Squire*, 34 N. Y. St. R. 722.)

In *Pumpelly* v. *Green Bay Co.* (13 Wall. 166), the defendant not only by its dam raised the water in Fox river above the height authorized by the statute, but the dam and its consequences of flooding the plaintiff's land was permanent. And in *Transportation Co.* v. *Chicago*, the *Pumpelly* case and another are mentioned as those in which the extremest qualification of the doctrine is to be found in support of an action for damages sustained in consequence of the performance of a public work. But added that " in those cases it was held that a *permanent* flooding of private property may be regarded as a taking." And in that case the court held that " acts done in the proper exercise of governmental powers and

not directly encroaching upon private property, though their consequences may impair its use are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the state or its agents, or give him any right of action.    This is supported by an immense weight of authority." In order to have protection against liability, the work must not only be done for the purposes of the public and by authority of law, but it must be done in manner and method reasonable with a view to as little injury to others as practicable, and with reasonable care, skill and dispatch.

It may be observed that the plaintiff does not allege delay on the part of the defendants in the commencement or prosecution of the work of construction of the bridge.    The further question is whether the inference from the evidence was fairly permitted that the defendants were chargeable with any want of care which caused the injurious consequences suffered by the plaintiff.    The propositions which the court was specifically requested to submit to the jury in that respect were whether the defendants constructed the dam at an unreasonable time, being shortly before the spring floods; also whether they should not have taken the water around the place of the work rather than hold it back from the channel by the dam.    The time and the necessity for the construction of it were matters to be determined by the trustees, upon whom was imposed the duty in that respect.    And assuming, as we must upon the evidence, that they acted in good faith, their exercise of discretion in those respects is not the subject of review.    (*Talcott* v. *City of Buffalo*, 125 N. Y. 280.)

It appears that it was necessary to put in the dam when the water in the channel was low, and that it could not be properly done in the spring during high water which usually came in April and May, and sometimes later.    While it may be that they could with propriety have, without serious prejudice to the use of the highway by the public, have delayed the work until low water in the summer, there is no support for the imputation of bad faith on the part of the defendants in erect-

ing the dam at the time they did. If the municipal corpora-
tion had owned the adjacent land it may at the requisite
expense, which it seems would have been large, have dug a
channel of sufficient width and depth around the place where
the work was done ; but it does not appear that this could have
been accomplished by any reasonable means. The circum-
stances of this case are not such that the omission of the
defendants to resort to all possible means to overcome the
obstruction by the dam to the flow of water into and through
this channel during the time reasonably necessary for the work,
rendered them chargeable with negligence in the performance of
their duty, although the consequence was that water remained
on the plaintiff's premises longer that season than usual.

These views lead to the conclusion that the evidence was not
such as to support a verdict for the plaintiff.

The judgment should be affirmed.

All concur.

Judgment affirmed.