## KERR v. JOSLIN.

*(Supreme Court, General Term, Fourth Department.  November, 1892.)*

1. OBSTRUCTION OF WATER COURSE—LIABILITY OF HIGHWAY COMMISSIONER.

Where it is necessary for a commissioner of highways, in the discharge of his public duty, to shut off the water from a mill in order to repair a culvert forming part of an artificial water course or tailrace, passing under a public street, and the repairs are prosecuted with diligence and reasonable care, the commissioner is not liable for damages for the loss of power to the mill pending such repairs.

2. SAME—FINDING OF REFEREE—CONCLUSIVENESS.

In an action by the mill owner against the commissioner of highways for damages and for an injunction to restrain defendant from maintaining the culvert as constructed, the question as to whether the new culvert was so constructed as to impair plaintiff's power, by causing the waters therein to set back in the tailrace upon the water wheel, was one of fact for the referee; and there being a conflict of evidence, and the finding being for defendant, and not against the weight of evidence, plaintiff's injunction was properly refused.

3. REFERENCE—REFUSAL TO FIND.

The refusal of a referee to respond to a request to find is not ground for reversal, unless such refusal was prejudicial to appellant.

MERWIN, J., dissenting.

Appeal from judgment on report of referee.

Action by Robert Kerr against Merritt F. Joslin.  From a judgment entered on the report of a referee, dismissing plaintiff's complaint, with costs, plaintiff appeals.  Affirmed.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*D. C. Stoddard*, for appellant.  *J. J. Duddleston, Jr.*, for respondent.

MARTIN, J.  This action was in equity, to perpetually enjoin the defendant from turning the water away from the plaintiff's mill, and from obstructing the stream below; to compel him to remove an alleged obstruction of the stream at that point; to recover damages for the use of the mill while idle by reason of the defendant's having shut off the water necessary to operate the same; and for injury to goods in process of manufacture at the time.  The plaintiff's claimed right of recovery was based upon the allegation that the defendant had wrongfully diverted a stream of water employed by the plaintiff in running his woolen mill and machinery.  The defendant justified the acts performed by him on the ground that he was sole commissioner of high-ways of the town in which the property was situated; that a bridge over the stream or culvert through which the water was conveyed from the plaintiff's mill had become impaired so that it was necessary to rebuild it; and that in doing so it was necessary to exclude the water from the stream or culvert, and that it was shut off only for such time as was necessary to rebuild such bridge.  The plaintiff was the owner and in possession of the premises described in the complaint, and had been since 1865.  Upon the premises was a woolen mill and its machinery, a portion of which was propelled by water.  It was used by the plaintiff in manufacturing cloth and carding wool.  The water to run the machinery was taken from Moyer creek, under the Erie canal, into an artificial canal or aqueduct, and thence to a bulkhead adjacent to plaintiff's mill, and from the bulkhead through a flume to plaintiff's wheel.  The fall of water at plaintiff's wheel was about nine feet.  After leaving the wheel, the water passed in a northerly direction over an apron or floor through a tailrace from plaintiff's mill, under a bridge or archway on Main street, in the village of Frankfort, and thence to Hoard's pond below.  During the years 1886 and 1887 defendant was sole commissioner of highways of the town of Frankfort.  Main street was one of the principal streets in the village of Frankfort, in that town.  In October, 1886, the bridge on that street over the tailrace to plaintiff's mill was out of repair, and it became necessary for the defendant, as commissioner of highways, to

build a new bridge at that place. In the forepart of that month the defend-
ant saw the plaintiff, informed him that it was necessary to build a new
bridge, and that, in order to build the same, it would be necessary to shut off
the water from plaintiff's mill for a short time; but the plaintiff did not con-
sent that it should be shut off at any time, but said he "could not ever spare
it."

On the 7th or 8th of October the defendant caused the water to be shut off
by closing the gate at Moyer creek, and it was kept closed until the 22d of
that month. Previous to turning the water off, the defendant made prepa-
rations to do the work of rebuilding the bridge. In order to rebuild it, it was
necessary to shut off the water from plaintiff's mill during its construction.
In constructing it the defendant procured suitable material, employed com-
petent workmen, and proceeded with reasonable diligence in the prosecution
of the work. When the water was shut off the plaintiff was actually engaged
in fulling cloth and manufacturing goods, having in process of manufacture
four pieces of cloth, containing 150 yards, worth 88 cents per yard, which was
destroyed, whereby he sustained damage to the amount of $122. He also had
in process of manufacture a quantity of yarn, which was injured, to his dam-
age of $107. The defendant, however, had no knowledge that the cloth or
yarn was in process of manufacture, or that it was being injured by plain-
tiff's mill being shut down. The value of the use of the plaintiff's mill dur-
ing the time it was idle was $15 a day.

Prior to the construction of the new bridge, the water from plaintiff's wheel
flowed under an old bridge on Main street, through a channel or tailrace about
four feet in width, in which there was a plank floor under the southerly side
of the roadway. In constructing the new bridge, the channel or tailrace was
increased to the width of seven feet, and the bottom was from three to five
inches lower than the bottom of the old culvert. The floor of the new culvert
descended each way from the middle of the street; the descent to the north
being from one half to one inch, and to the south from four to five inches.
The highest part of the floor in the new culvert is at least three inches lower
than the floor or table on the northerly side of plaintiff's water wheel in the
wheel pit. The top of the flushboard of Hoard's dam, which forms his pond,
is higher than the highest part of the floor of the new culvert. The floor of
the tailrace adjacent to plaintiff's lands is from five to six inches lower than
the floor of the wheel pit and that portion of the tailrace which is on the
plaintiff's premises. In rebuilding the new arch, after removing the old cul-
vert, the defendant excavated about two feet on each side for the purpose of
widening the tailrace, and left standing an old wall or walls on the north and
just outside of the street, which had previously been used to support a tem-
porary building over the tailrace. The old walls were from one and one half
to two feet closer together than the walls of the new culvert, and constituted
no part of the old culvert. They were not in the highway, and it did not ap-
pear that the defendant had any right to remove them.

Before the defendant entirely completed the culvert the water was turned
on. At that time the tailrace had not been cleaned out, there being upon
the floor stone and plaster which somewhat impeded the flow of water therein.
Since the completion of the new culvert, and when the water is turned off
from the tailrace, water stands 3 or 4 inches deep in places from near the top
of the planks in the center of the culvert to the plaintiff's land, about 20 feet
from his wheel pit. The new culvert is 61 feet long, embraces both side-
walks, extends from the south to the north line of the street, and is 3 feet
wider than the old culvert. South of the new culvert, near the face of the
plaintiff's mill, the tailrace is now, and prior to September, 1886, was, only
5 feet and 8 inches wide, and the old walls north of the culvert are only 5 feet
apart, both of which narrow places are outside of the street. The capacity of
the new culvert to discharge the water from plaintiff's wheel is greater than

it was in the old. The water does not set back onto plaintiff's water wheel in consequence of the construction of the new culvert or archway. The foregoing are substantially the facts found by the referee.

The referee, as matters of law, held that the tailrace being an artificial water course, intersecting the highway and necessitating the building and maintaining of a culvert at that point, the defendant, as commissioner of highways, had a right to temporarily turn the water off, when reasonably necessary to put the highway in a condition of safety for public travel, and that plaintiff had no redress against defendant for any damage resulting from a prudent and reasonable exercise of such right; that the defendant, as such commissioner, in rebuilding the culvert in question, had the right, under the circumstances, to shut off the water for a reasonable length of time, and, for any damage resulting to the plaintiff in consequence, the plaintiff had no redress against defendant; that the plaintiff sustained damage by reason of the "detention of the said mill" in the sum of $450 and upwards, but was not entitled to recover the same of the defendant; that the defendant constructed the said culvert in a reasonable and proper manner, employing competent and sufficient workmen and using proper material for its construction; that it does not obstruct the flow of water from the plaintiff's mill, nor cause the waters to set back upon the plaintiff's water wheel; that the defendant acted as commissioner of highways in constructing the culvert, and the manner of construction of the floor or archway does not injure plaintiff's mill; that it was the duty of the defendant, as such commissioner, to build a new culvert at the time, and in building the same he used reasonable care and was not negligent; that defendant was entitled to judgment dismissing the plaintiff's complaint, with costs, and ordered judgment accordingly.

In the appeal book there is a certificate that it contains all the evidence given on the trial. This evidence we have carefully examined, and find it sufficient to justify the referee in finding that the bridge or culvert, as constructed, did not obstruct the flow of water from the plaintiff's mill, nor cause the waters to set back upon his water wheel. Whether the new culvert was so constructed as to impair the plaintiff's water power, by causing the waters therein to set back in the tailrace and upon his water wheel, was a question of fact to be determined by the referee. Upon that question there was a conflict in the evidence. The referee found for the defendant. We find no sufficient reason to disturb the referee's findings in that respect. We cannot say that they were against the weight of evidence. If the referee was justified in finding those facts, as we think he was, the plaintiff could not sustain the action for an injunction to restrain the defendant from maintaining the culvert as it was constructed, and to require him to restore it to its former condition. It follows, therefore, that the judgment should not be disturbed upon the ground that the plaintiff was denied the relief by injunction sought in this action.

This brings us to the question whether the referee erred in denying the plaintiff the relief sought by way of damages, for the loss of the use of his mill, and injury to his goods in process of manufacture. The defendant was the sole commissioner of highways of the town in which the premises were situated. The water to propel the machinery in the plaintiff's mill was carried across the highway in a culvert. It was covered by a bridge or arch, which it was necessary to maintain for the accommodation of the public traveling along the street or highway. It was the defendant's duty, as such commissioner, to cause this bridge to be kept in repair. Rev. St. (8th Ed.) p. 1347, § 1. It was in the performance of this public duty that defendant shut off the water running through the culvert, so as to enable him to repair or rebuild the bridge or arch in the street at that place. The learned referee has found that it was necessary to shut it off, and keep it shut off during the construction of the new bridge or arch, and that the work was prosecuted with

diligence and reasonable care. Under these circumstances we fail to discover any ground upon which the defendant should have been held liable to the plaintiff for the injury sustained by him.

In *Atwater* v. *Trustees, etc.,* 124 N. Y. 602, 27 N. E. Rep. 385, where the defendant, while engaged in building a bridge, in pursuance of statutory authority, erected a cofferdam in the outlet of a lake, which was necessary for the work, but which obstructed the flow of the water from the lake and caused it to remain on plaintiff's land, and substantially deprived him of its beneficial use for one season, it was held that, it appearing that the work was properly and expeditiously done, the defendant was not liable for the damages; that there was not a taking of plaintiff's property, within the meaning of the constitutional provision prohibiting such taking without compensation; and that the time and the necessity for the construction were matters to be determined by defendant, and, in the absence of proof of bad faith, the exercise of this discretion was not the subject for review. In delivering the opinion in that case it was said: "Nor can they [the defendants] be relieved unless their rights were superior to those of persons engaged in work private in character. The doctrine, however, is well established in this state, that public officers lawfully employed in making public improvements, and corporations engaged in the performance of work of a public nature authorized by law, are not liable for consequential damages occasioned by it to others, unless caused by misconduct, negligence, or unskillfulness. *Radcliff's Ex'rs* v. *Mayor, etc.,* 4 N. Y. 195; *Bellinger* v. *Railroad Co.,* 23 N. Y. 42; *Moyer* v. *Railroad Co.,* 88 N. Y. 351; *Uline* v. *Railroad Co.,* 101 N. Y. 98, 4 N. E. Rep. 536. And such is the weight of authority elsewhere. *Transportation Co.* v. *Chicago,* 99 U. S. 635, 641." The case cited is in many respects similar to the case at bar. The principle of that case seems to be decisive of the question under consideration. The defendant was a public officer, and employed in work of a public nature authorized by law. He was guilty of no misconduct, negligence, or unskillfulness, and was not, we think, liable to the plaintiff for the injury he sustained.

The appellant contends that the referee erred in refusing to find certain facts in accordance with his requests. We have examined his numerous requests, and find that in many instances, where the referee declined to respond to the request, there was a conflict in the evidence, and the referee found the converse of the proposition contained in the proffered request. In others, the evidence was insufficient to justify the requested finding, or the request was to find mere evidentiary facts which were neither controlling nor important in the light of the findings made. Indeed, we have found no refusal to find any material fact, which was not inconsistent with the findings made, or thereby rendered unnecessary. Our attention has been called to no finding that was not justified by the evidence, or to any refusal to find that was unwarranted and prejudicial to the appellant. The refusal of a referee to respond to a request to find is not a ground for a reversal, unless such a refusal was prejudicial to the appellant. *In re Hicks,* 14 N. Y. St. Rep. 320; *Morris* v. *Wells,* (Sup.) 7 N. Y. Supp. 61. The refusal of a referee to find on questions of fact is not fatal where the findings are not material to the decision, or would not be beneficial to the party asking them. *Callanan* v. *Gilman,* 107 N. Y. 360, 14 N. E. Rep. 264. We are led by these considerations to the conclusion that the referee committed no error which would justify us in disturbing the judgment appealed from, and that it should be affirmed.

Judgment affirmed, with costs.

HARDIN, P. J., concurred. MERWIN, J., dissented.