TOWN OF EAST MONTPELIER *vs.* J. S. WHEELOCK, et al.

January Term, 1898.

Present: TAFT, ROWELL, MUNSON, START and THOMPSON, JJ.

*Constitutional Law—Taking of Property—Right of Municipality to Have Stream Lowered—Damages under Injunction Bond.*

A municipality, for the purpose of repairing a bridge which the law requires it to maintain, may insist upon the necessary lowering of the ponded water at that point, without compensating the owners of the power.

Such an interference with the use of the power is not a taking of property within the meaning of the constitutional provision that compensation shall be made.

In the present case the injunction was improperly granted because the defendants, the power owners, had not prevented nor intended to prevent the necessary lowering of the stream, and if under cover of the injunction the municipality required of them a greater or longer reduction of the flow than was necessary for the convenient prosecution of the work, it is liable for the damages under the injunction bond.

IN CHANCERY.   Upon bill, answer and master's report, at the September Term, 1897, Washington County, *Tyler*, Chancellor, rendered a *pro-forma* decree dismissing the bill and allowing the defendants the larger sum reported as damages under the injunction bond.   The orator appealed.

*S. C. Shurtleff* for the orator.

*Fred L. Laird* for the defendant.

START, J.   It is alleged in the bill, that the complainant town is one of the corporate towns of this state, and as such owes certain duties to the public, among which is the keeping in repair and maintenance of highways and bridges within the limits of said town; that there is a certain bridge across Winooski river in said town, now known as the Fowler bridge, which it is the duty of the complainant to maintain and keep in repair; that the defendant Wheelock is the owner of a water privilege on said river and has a dam

across it at the village of East Montpelier, which, when the
dam is full, obstructs the water so that it sets back under
the Fowler bridge aforesaid to the depth of seven or eight
feet; that the other defendants lease power of him and use
water from said dam; that the abutments under said Fow-
ler bridge are out of repair, so much so that they must be
built over, and the complainant has been, and now is,
repairing the same; that the soil under the abutments is a
quicksand so that it is necessary to drive piles and cut the
same off below low-water mark, upon which to commence
to lay the stone abutments which are to support said bridge;
that it is not now definitely known which rights are superior
in case of conflict, those of the complainant or those of the
defendants, but the complainant avers that it has superior
right and that it is the duty of said J. S. Wheelock, his
lessees and assigns, on proper notice from the complainant,
to let the water out of the dam for a reasonable time to
enable the complainant to rebuild the abutments of said
bridge; that the complainant gave the said J. S. Wheelock
notice to draw the water from his said dam, as it was about
to commence work on the abutments of said bridge, and
thereupon, the complainant's agent and the said Wheelock
did let the water out of said dam and the complainant com-
menced work, placing a temporary support under said bridge
near its west end, building a coffer-dam and excavating
preparatory to driving piles for the abutment at the west
end; that the defendants, Wallace Clark and the Eureka
Granite Company, are using water from said dam and claim
an interest in said water-power, as the complainant is
informed and believes; that the complainant is informed and
believes that the said J. S. Wheelock closed up his dam and
shut the water back on the 2nd day of August, 1896; that
this was done without the knowledge or consent of the
complainant or its agents in control of said work, and the
water was, in fact, shut off so that it set back, broke in said
coffer-dam and flooded the place where said abutment was

being built, stopping the work and doing great damage; that the complainant was proceeding with the repairs with all possible dispatch, employing all the men that could be used on the work to advantage; that the complainant has caused a hole to be opened in said dam so that the water is now being drawn out, and is ready to commence on the same as soon as the water is drawn, but it is informed and believes that the said J. S. Wheelock will again close up the hole in the dam and flood the work so that it will be impossible to proceed with the repairs, unless restrained by order of court.  Upon the filing of the bill, an injunction was issued, restraining the defendants from hindering or interfering with the repairing of the bridge, or from preventing the water from flowing through the dam, or from causing the water to rise in the pond so as to interfere with the work of repairing the bridge.

The master finds, that one of the selectmen of the complainant town had an interview with defendant Wheelock, in which the purpose of the complainant to repair the bridge was disclosed, and requested Wheelock to draw the water from the pond for that purpose, at such times as might be deemed necessary, saying that he expected the complainant would have to pay what was right;  that Wheelock consented to empty the pond whenever required, accompanying the promise by the statement, that, for so doing, he only wanted what was right; that, on the 31st day of July, the complainant was ready to have the water drawn that it might construct a truss under the bridge, and sent men to help take out the water-gates, which was done; that, when the truss was constructed, the defendants were allowed to retain the water in the dam until further notice; that, later, the defendants were requested to draw the water from the pond, which was done; that, on August 10th, defendant Wheelock, learning that the complainant had not worked on Sunday, the 9th, instructed his men to so far close the dam as to get a fall of eight feet upon the wheels; that this

could be done, as the water was then flowing, without increasing the depth of the water at the bridge; that, on Wednesday, the 12th of August, soon after midnight, the water in the stream suddenly rose, overflowed the walls of the pit where the pile-driver was stationed and filled the same, and the complainant's officers, on going to defendant Wheelock's mill, found the water flowing over the top of the dam, and that although it did not rain in that vicinity, it was afterwards discovered that there had been what was called a cloud-burst in the town of Calais, which had caused the sudden rising of the stream. The master finds, that it was not the intention of defendant Wheelock to raise the water in the stream so as to impede the work at the bridge; that, in the adjustment of the waste-gates, they had been so placed that, with only the water ordinarily flowing in said stream, it would not have risen so as to have yielded more than eight feet head upon the wheels, and would not have affected the work of the complainant at said bridge; and that, immediately after the circumstance last stated, the complainant brought its bill in equity and procured an injunction. From these findings, it is clear, that the cloud-burst in Calais caused the pond to fill and the water to set back upon the complainant's work ; that the cloud-burst was an unusual and unexpected occurrence; that the parties did not know of it until after the work was flooded and the complainant had brought its bill and enjoined the defendants from obstructing the natural flow of the water; that the defendants acted in good faith, believing that if there was an increase in the flow of water which would require a further opening of their gates, they would observe it in season to do so; that they had no intention of impeding the complainant's work; and that, under these circumstances, there was no occasion for enjoining the defendants from obstructing the flow of the water, and the complainant's bill must be dismissed.

The defendants insist that they are entitled to injunction

damages for the loss of the use of their mill during the time the complainant was making repairs upon the bridge. The master finds that the time selected by the complainant for doing the work was as favorable as could have been selected for its speedy and successful accomplishment; that it was at a season of the year when the defendants were less damaged than they would have been at any other time; that the plans adopted by the complainant for carrying on the work, considering the obstacles to be overcome, were feasible and reasonable; and that there was no unreasonable delay on the part of the complainant in pushing the work to completion, and the water was not drawn longer than was reasonably necessary. The defendants maintain a dam across the Winooski river, which obstructs the natural flow of the water and causes it to set back some two miles to a point where the complainant is, by law, required to maintain and keep in repair a bridge for the reasonable, convenient and safe passage of the traveling public over the river, and, for neglect of this duty, is liable in damages to persons injured while passing over the bridge. The complainant, in making repairs upon the bridge, was in the performance of a public duty imposed upon it for the benefit of the public, and for and on behalf of the State, and it had the same and all the rights that the State would have in maintaining and keeping in repair the bridge; and, if it became necessary for the complainant, in making repairs upon the bridge, to have the water of the river flow in its natural way without obstruction, while such repairs were being made with reasonable dispatch, it had the right to require the defendants to desist from obstructing such natural flow, and to allow the water to flow substantially as it was accustomed to flow at the time the defendants' grantors obtained their grant from the State and acquired riparian rights in the river; and, for thus yielding to a public right and necessity, the defendants have no redress against the complainant. The inconvenience and delay caused by

thus refraining temporarily from obstructing the natural flow of the river while necessary repairs were being made by authority of the State and for the benefit of the public, may well be regarded as a risk and burden assumed by the defendants in maintaining a dam across the river for private purposes. The requirement was not a taking of the defendants' property, within the meaning of the constitutional provision prohibiting the taking of private property for public use without compensation. The complainant did not take the defendants' property; it only temporarily prevented the defendants from obstructing the natural flow of the river at a point where the State had an easement to repair a bridge for the safe passage of the public, and rendered the defendants' mill less profitable for such time as the master has found was reasonable for making the repairs.

In *Northern Transportation Co. of Ohio* v. *Chicago,* 99 U. S. 635, the plaintiff sought to recover damages for injuries alleged to have been sustained by being deprived of access to its premises and the river while the city was constructing a tunnel or passageway along the street. Mr. Justice Strong, in holding that the defendant was not liable, said: "It is undeniable that in making the improvement of which the plaintiffs complain, the City was the agent of the State, and performing a public duty imposed upon it by the legislature; and that persons appointed or authorized by law to make or improve a highway are not answerable for consequential damages, if they act within their jurisdiction and with care and skill, is a doctrine almost universally accepted alike in England and in this country.  *  *  *  *
The doctrine, however it may at times appear to be at variance with natural justice, rests upon the soundest legal reason. The State holds its highways in trust for the public. Improvements made by its direction or by its authority are its acts, and the ultimate responsibility, of course, should rest upon it. But it is the prerogative of the State to be

exempt from coercion by suit, except by its own consent. This prerogative would amount to nothing if it does not protect the agent for improving highways which the State is compelled to employ.    The remedy, therefore, for a consequential injury resulting from the State's action through its agents, if there be any, must be that, and that only, which the legislature shall give.    It does not exist at common law.    The decisions to which we have referred were made in view of *Magna Charta* and the restriction to be found in the constitution of every State, that private property shall not be taken for public use without just compensation being made.    But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision.    They do not entitle the owner of such property to compensation from the State or its agents, or give him any right of action."    In *Atwater* v. *Trustees*, etc., 124 N. Y. 602; 27 N. E. Rep. 385, where the defendant, while engaged in building a bridge in pursuance of statutory authority, erected a coffer-dam in the outlet of the lake, which was necessary for the work, but which obstructed the flow of the water and caused it to remain on plaintiff's land and substantially deprived him of its beneficial use for one season, it was held, that, it appearing that the work was properly and expeditiously done, the defendant was not liable for the damages; that there was not a taking of plaintiff's property, within the meaning of the constitutional provision prohibiting such taking without compensation; and that the time and the necessity for the construction were matters to be determined by the defendant, and, in the absence of proof of bad faith, the exercise of this discretion was not the subject of review.    In delivering the opinion in that case it was said: "The doctrine, however, is well established in this State, that public officers lawfully

employed in making public improvements, and corporations engaged in the performance of work of a public nature authorized by law, are not liable for consequential damages occasioned by it to others, unless caused by misconduct, negligence or unskillfulness." In *Kerr* v. *Joslin*, 20 N. Y. S. R., it is held, that, when it is necessary for a commissioner of highways, in the discharge of his duty, to shut off the water from a mill in order to repair a culvert forming a part of an artificial watercourse or tail-race passing under a public street, and the repairs are prosecuted with diligence and reasonable care, the commissioner is not liable for damages for the loss of power to the mill pending such repairs. In *Green and Barren River Nav. Co.* v. *Chesapeake, Ohio and Southwestern R. R. Co.*, 2 L. R. A. 540 (Ky.), it is held that the obstruction of navigation by the repairing of a bridge over a river in replacing a draw-span, which bridge is maintained under lawful authority, creates no right of action in favor of parties entitled to navigate the river, if the repairs are made in such a manner as not unreasonably to obstruct the navigation. In *Livermore* v. *Jamaica*, 23 Vt. 361, it is held that taking land for a highway is not such an appropriation of property to public use, within the meaning of the constitution of this State, as necessarily requires compensation in money to be made therefor.

In *Morey* v. *Fitzgerald*, 56 Vt. 489, it is said that if a public highway be out of repair and impassable, a traveller may lawfully go over the adjoining land, since it is for the public good that there should be at all times free passage along the highway for all the subjects of the State. In such case, an interference with private property is obviously dictated and justified *summa necessitate*, by the immediate urgency of the occasion, and a due regard to the public safety and convenience.

We think it clear, that the complainant had a right to have the water drawn as low as was necessary for the convenient prosecution of the work, and hence, it is not

liable for damages occasioned thereby; but if it went beyond its right and thereby damaged the defendants, it is liable. The master has not found whether the defendants were required to and did draw the water lower than was reasonably necessary for the convenient prosecution of the work; and the report must be re-committed for that purpose, and for the assessment of injunction damages, if any have been sustained by the defendants by reason of being compelled to draw the water lower than was necessary for the prosecution of the work in rebuilding the bridge.

*The pro-forma decree is reversed and cause remanded with mandate.*