(48 Misc. Rep. 125)

LINTON PHARMACY v. McDONALD et al.

(Supreme Court, Special Term, New York County. August, 1905.)

MUNICIPAL CORPORATIONS—OBSTRUCTION OF STREETS—NEGLIGENCE.

A contractor, excavating a tunnel through a part of a street, began on the west side of the street and dug a trench eastward until near to street railway tracks, where, in order to enable the railway to continue operation, an elevated inclosed structure was built, upon which the track was relaid, and the excavation was continued beneath the elevated structure. The elevation of the tracks could have been avoided if the excavation had been begun from the other side; but because of the additional hazard to buildings which would have arisen if the excavation had been so begun, and because the work would have been unduly delayed and rendered more costly, such other method was not practicable. , *Held*, that the contractor exercised the degree of care and skill required by law, and was not liable for damages to the business of the owners of a store which faced toward the elevated structure, and which was patronized by customers who came in carriages and were unable to gain access to the store by any other entrance.

Action by the Linton Pharmacy against John B. McDonald and others. Judgment for defendants.

C. Cohen, for plaintiff.

H. A. Robinson, for defendants.

McCALL, J. This litigation arises out of the construction of the so-called "subway" in this city, which work was undertaken under the provisions of the various acts of the Legislature of this state, passed during the years 1892, 1893, 1894, 1895, and 1896. As provided for by this legislation, a rapid transit commission was organized, a route was determined upon, and the contract for the construction of the road was made with John B. McDonald, who was the successful bidder in the competition between contractors; all working and figuring upon the invitation of the commission upon the basis of "a form of contract" annexed to the request made of them to offer bids. The proposed construction was to be underground in the main, and to traverse Manhattan Island from the Battery northward. It was to be built in sections, and the section which began at Great Jones street and ran northward to a point on Fourth avenue between Thirty-Third and Thirty-Fourth streets, was known as section three. From Fourteenth street to Seventeenth. street, extending from Fourth avenue on the east to Broadway on the west, is an open park space know as "Union Square," and that part of Fourth avenue between Fourteenth street and Seventeenth street has come to be designated as "Union Square East." The construction of section 3 was sublet by the contractor, McDonald, to the firm of Holbrook, Cabot & Daly, and by them in turn assigned to the Holbrook, Cabot & Daly

Contracting Company. The plaintiff in this action was the lessee of the store located in the building known as the Westmoreland, situate on the southeast corner of Seventeenth street and Union Square East, the term of the occupancy extending from January 4, 1901, to May 1, 1903. At this place the plaintiff and its predecessors had conducted the business of selling drugs and merchandise of various kinds for many years, and had also established a large and steady trade in the sale of soda water. A considerable portion of its customers came to the store in carriages, and the only entrance to the establishment was the one that fronted on Union Square East. Work was begun on the construction of section 3 September 15, 1900, and according to the terms of the contract for the construction of section 3 at Fourteenth street, and from there northwardly, the defendant was to construct an express station, with four tracks and four platforms, two on the outside and two in the middle as turn platforms. In order to give access to the turn platforms it was necessary to depress the whole subway and to construct a second or intermediate level between the platform level and the street surface. North from the express station, the contract called for four main lines and an extra track or side track, so that extending north five tracks had to be constructed from the north end of Fourteenth street station to nearly Seventeenth street. The condition which existed in Union Square East along the line of the subway in the spring of 1901 was as follows: The surface was occupied by a double-track electric railway, and the subsurface was occupied by the ordinary miscellaneous assortment of sewers, pipes, mains, electric conduits, etc. The formation at this point was rock, and it came directly to the surface of the street or road. For most of the distance the street railway structure rested directly on this rock, and many of the pipes and mains were laid in trenches cut in the same. The firm of Holbrook, Cabot & Daly began operations on that portion of section 3 immediately in front of plaintiff's premises by excavating a trench on the west side of the roadway on Union Square. This trench was about 25 feet deep and extended from the south side of Seventeenth street to near Fourteenth street, from the west curb to within about 1½ feet west of the street railway's most westerly track. During its construction the street surface upon the easterly portion of the square was undisturbed. This trench, which was dug out of solid rock on the westerly side of the roadway, was completed prior to May 1, 1901. On or about May 1, 1901, after the contract had been assigned to the defendant corporation, the Holbrook, Cabot & Daly Contracting Company, said company undertook to widen the trench towards the east, and started to take rock from under the car tracks at different points along the line between Fifteenth and Seventeenth streets, and drilled holes, put in blast charges, and fired the same. These blasts broke the concrete under the tracks and broke the ducts which contained the electric cables which supplied power to said surface railroad, allowing the said cables to fall. The concrete foundations of the car tracks and the cable ducts, and the rock upon which these concrete foundations rested, had become practically one body, so that if you broke the rock you broke the concrete foundations. The electrical conduits

at this point had also become an integral part of the street car track, as they had been laid in concrete trenches on either side of the car tracks. The said defendant corporation thereupon suspended blasting rock under the car tracks and built a superstructure or elevated roadway for the support of said tracks. This superstructure or elevated roadway was about two feet above the original surface of the street and extended on the easterly said of. Union Square from a point between Fourteenth and Fifteenth streets to a point between Seventeenth and Eighteenth streets. It consisted of the iron or steel work of the Metropolitan Street Railway Company, including the rails, and of timbers. It was 24 feet wide from the easterly curb of Union Square. This platform was fenced in places, the fence extending the entire length of the same, except at street crossings; the fence on the curb being a bar fence about 4 feet high and the fence on the west side was a solid board fence 6 feet high. This temporary structure was commenced about May 1, 1901, and was removed about August 1, 1902. The said defendant corporation, after extending the trench to the space originally covered by the car tracks, and after completing said section in the middle of the street, removed said structure on or about the 1st day of August, 1902, and proceeded to extend said trench east to the easterly curb of said roadway, so that from the 1st day of May, 1901, to the 1st day of August, 1902, this temporary superstructure was maintained by it and used by the Metropolitan Street Railway to run its cars and was also used by other vehicles. On the side streets, especially Seventeenth street, wooden inclines were built, so that vehicles could approach and pass over said structure. From August, 1902, until the completion of said trench the street was open from the easterly curb of Union Square to about 25 feet west of the same.

The plaintiff complains of the erection of said superstructure immediately in front of its place of business during a period from May 1, 1901, to August 1, 1902, and seeks to restrain said defendant from maintaining said structure in front of its place of business, and to recover damages for its deprivation of the easement of access during the period it was maintained, and for the impairment of the rental value of its premises and for the partial destruction of its carriage and soda water fountain trade. The structure complained of was removed before the trial of this action and the plaintiff now seeks to recover damages as aforesaid. The plaintiff contends that neither the statutes nor the contract for the building of the subway authorized the performance of the acts of the defendant, and that the defendant's method of construction, and particularly of disposing of the Metropolitan Company's roadway, was improper and unskillful, and that the damages which the construction caused are not a necessary consequence of a public work, and were occasioned by the unskillful and improper manner of its performance, while the defendants contend that they are not liable in damages to the plaintiff for the erection of the structure complained of because it was engaged in the performance of a work of a public nature, authorized by law, and that, therefore, they are not liable for consequential damages occasioned by them to others unless caused by their misconduct, negligence, or unskillfulness.

Accordingly two questions are presented for decision before the question of damage is gone into, viz.: First, was the action of the defendant authorized by law, and second, if so did it exercise the skill and care contemplated by the law in the execution of its work. In the case of Atwater v. Trustees of Village of Canandaigua, 124 N. Y. 608, 27 N. E. 387 the court says:

"The doctrine, however, is well established in this state that public officers lawfully employed in making public improvements, and corporations engaged in performance of work of a public nature authorized by law, are not liable for consequential damages occasioned by it to others unless occasioned by misconduct, negligence or unskillfulness."

In this case the court distinguishes between damages caused by the erection of a public improvement and damages occasioned by a trespass or a permanent encroachment. In the case of Fries v. New York & H. R. R. Co., 169 N. Y. 276, 62 N. E. 359, the court states:

"The law is well settled in this state that where the property of an abutting owner is damaged, or even his easements interfered with in consequence of the work of an improvement in a public street conducted under a lawful authority, he is without remedy or redress, even though no provision for compensation is made in the statute. Whatever detriment the improvement may be to the abutter in such cases, is held to be damnum absque injuria."

The case of Lewis v. New York & H. R. R Co., 162 N. Y. 202, 56 N. E. 540, which cites with approval Taylor v. New York & H. R. R. Co., 27 App. Div. 190, 50 N. Y. Supp. 697, seems to be in conflict with the cases above cited, but in this case the court used the following language:

"We have decided the case before us and have not tried to decide other cases, which, although arising in the same section, rest upon different facts, and may be controlled by different principles of law."

And the same court, in a later case, namely, Fries v. New York & H. R. R. Co., supra, two of the judges who wrote opinions admitted that its decision was in conflict with the Lewis Case, one of the judges who wrote a concurring opinion using the following language, viz.:

"While I agree generally with the views expressed by Judge O'Brien, I still think that the decision about to be made can be said to be in conflict with the Lewis Case, and to such extent as it is, the Lewis Case should be regarded as limited."

In the case of Bates v. Holbrook, 171 N. Y. 468, 64 N. E. 183 the court concedes the following propositions to be correct: First, that the law is settled in this state that acts which are authorized by express enactments of the Legislature and performed in good faith upon a work of a public character do not render the persons performing them liable for consequential damages, unless there is an absence of due care and skill in the execution of the work; second, that in authorizing the construction of a railroad under the streets of New York the Legislature may be deemed to have authorized the performance by the rapid transit commission and by the contractors of such acts as are necessary to the execution of the work. It is true that in the Bates Case the court held that the plaintiff was entitled to recover for damages, but it was so held upon the specific ground that

the defendant had erected a power house in front of his premises, which was a nuisance because it was used for the generation of compressed air to be used along the entire line of work undertaken by the contractors, from Great Jones street to Thirty-Second street; and was not limited to the work performed immediately in front of the house, and could have been located elsewhere, and that the nuisance was still maintained when the work immediately in front of the premises in question was accomplished. It would, therefore, seem that the injuries of which the plaintiff complains are consequential upon the legitimate prosecution of a public work done under legislative authority, and that for such injury no action lies unless it appears from the evidence that the defendant's method of construction was improper and unskillful, and not a necessary consequence of a public work and the damage was occasioned by the unskillful and improper manner of its performance.

There is no contention that the work performed by the defendant was defective or unskillful from the standpoint of technical engineering; but it is contended by the plaintiff that the work could have been performed quite as well by the defendant without constructing the superstructure complained of and maintaining it to the detriment of the plaintiff from the 1st day of May, 1901, to the 1st day of August, 1902. Plaintiff conceded that during the time when it was necessary to dig the trench immediately in front of his premises, to wit, on the east side of the roadway, he would be obliged to suffer the inconvenience and injury consequent upon the performance of a work of a public character for the benefit of the community; but that it was not necessary to build the superstructure immediately in front of his premises for the purpose of excavating that portion of the tunnel which was located in the center of the street under the car tracks of the Metropolitan Railway. The evidence on this question is conflicting; the experts for the plaintiff contending that the superstructure could have been avoided had the excavating been started from the east side of the street instead of the west side, or by building a temporary structure over the trench, which was originally dug out on the west side of the street, or by building temporary tracks west of the said trench originally built on the west side of the road. The defendant's experts, however, contend that while the methods suggested by the plaintiff's experts were possible, they were not feasible, for the reason that they would occasion undue delay, which would postpone the completion of the entire subway, and that they would cause unnecessary damage to abutting property on the east, and that they would be unworkmanlike, and that to place temporary tracks west of the westerly trench would be to invade Union Square Park and would cause great delay by reason of the location of the Everett House hotel, which would be directly in front of said temporary tracks and would occasion the construction of said temporary loop at great expense and delay.

It appears from the evidence that the defendant, after the completion of the trench on the westerly side of the street, did attempt to take away the rock from under the car tracks in the center of the street without removing the tracks; but it became dangerous to do so, because

of the fact that the concrete foundations of the Metropolitan Railway tracks and ducts had become bonded to the rock underneath it, so that the concrete foundation and the rock had become one body, and that it was impossible to blast the rock without injuring the concrete foundations of the electrical railway, and that, therefore, it applied to the chief engineer of the subway and the rapid transit commission for permission to move said tracks temporarily to the east, and that the said chief engineer, after investigating the condition of the street at this section fully, granted permission to said contractor to remove said tracks to the east, and also permission to build the temporary structure complained of and maintain it while the center section was being excavated. The said engineer, William Barclay Parsons (page 109 of testimony), in speaking of said permission, testified that it was absolutely necessary to shift said tracks to the east, and that in shifting said tracks to the east it was not feasible to lay on the track level with the street surface on account of the pipe and electric subways and other substructures occupying space beneath the surface, and that it would not have been reasonably feasible to shift said temporary tracks over the partial excavation on the west. He also stated (page 110) that to place the temporary tracks over the excavation on the west side was not reasonably feasible, because the work would have been delayed by so doing an unreasonable amount of time, to the great damage of the public, and would delay the completion of the whole of the subway.

It also appears from the testimony of the defendant's experts, and from the testimony of the officer of the defendant, Holbrook, that it would have been unworkmanlike and dangerous to blast from the east side of the street, instead of the west, by reason of the fact that the easterly side of the street was abutted by numerous buildings, while the westerly side was abutted by the park, and that the whole section of this particular location was of solid rock and had to be blasted by numerous heavy charges of explosives. It also appears from the testimony of defendant's officer, Holbrook, and the defendant's experts, that it would not have been feasible to lay the temporary tracks of the Metropolitan Railway on the easterly side of the street level with the surface of the street, because of the location of pipes and mains under the street at that point which would have to be lowered several feet, which would have necessitated the blasting of the rock at least a couple of feet in order to make sufficient room for placing the yokes of the car tracks on a level with the street. The evidence of the plaintiff's experts in no way, in my opinion, contradicts the evidence of the defendant's in these particulars in substance. At most they prove that it would have been possible to have adopted some other method than the one adopted by the defendant, but that such methods would have been attendant with considerable delay, which would have tied up the completion of the whole subway for a considerable time and with considerable danger to the property abutting on the easterly side of the roadway.

I am therefore of the opinion that the defendant exercised proper judgment, skill, caution, and diligence in completing its contract, and is entitled to a judgment herein in its favor.