FELICE TOCCI, Appellant, *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK, THE NEW YORK AND HARLEM RAILROAD COMPANY and THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondents.

*Constitutionality of chapter* 339 *of the Laws of* 1892 — *contribution of money by the city of New York to the expense of elevating railroad tracks.*

The provision of chapter 339 of the Laws of 1892, which imposes upon the city of New York the payment to the New York and Harlem and the New York Central and Hudson River railroad companies of one-half the expense of the Park Avenue and Harlem River improvement, including the elevation of the railroad tracks and the restoration to public use of cross streets thereunder, is not obnoxious to the provision of the Constitution of the State of New York (Art. 8, § 11), providing that no city shall thereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation; nor shall any such city be allowed to incur any indebtedness except for city purposes.

*So held,* upon the facts appearing upon an appeal from an order denying an injunction *pendente lite* in an action brought by a taxpayer to restrain the payment by the city of New York to the New York and Harlem and the New York Central and Hudson River railroad companies, of certain moneys under the provisions of said chapter 339 of the Laws of 1892.

APPEAL by the plaintiff, Felice Tocci, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the city and county of New York on

the 15th day of September, 1893, denying the plaintiff's motion for an injunction *pendente lite.*

*A. Reynaud,* for the appellant.

*Frank Loomis,* for the respondents, the New York and Harlem Railroad Company and New York Central and Hudson River Railroad Company.

*G. L. Sterling,* of counsel for respondent, the mayor, etc.

VAN BRUNT, P. J. :

This action is brought by a taxpayer to restrain the city officials from paying to the railroad companies, defendants, certain moneys under the provisions of chapter 339 of the Laws of 1892, upon the ground that it imposes upon the city a contribution to the private railroad structure belonging to the defendant railroad companies, and is, therefore, unconstitutional. Upon the application for an injunction *pendente lite* affidavits were submitted upon both sides, and certain material facts controverted in those affidavits. In cases of this description it is much better practice where the right to a preliminary injunction has been denied, and there are disputed questions of fact, that the party should go to trial and settle the facts, and there determine the question as to the right to an injunction, rather than to attempt to procure a decision of the General Term upon a state of facts which may be entirely changed upon the trial, and unless a very clear case is made by facts which could not be found to be different upon the trial such an order should be affirmed.

In the case at bar upon an examination of the papers upon which this application was founded, and the answers thereto, it seems to us that there is no possible reason for our interference with the court below. The whole fallacy of the plaintiff's action is the assumption that the contribution of money by the mayor, aldermen and commonalty of the city of New York to the enterprise in question is a contribution to a private use. On the contrary, it would appear that it is a payment upon the part of the city for benefits and privileges received; and with the question as to whether the city has paid a high or low rate for what it has acquired we have nothing to do.

It appears that the defendants, railroad companies, were, prior to 1872, the owners of and operating on Fourth avenue, in the city of New York, steam railroads from Forty-fifth street up to and across the Harlem river.   In 1872 an act was passed giving the New York and Harlem Railroad Company a statutory grade between Forty-fifth street and the Harlem river, an increased width of depressed roadway, and where the said roadway was to be in tunnel giving to the city and the people the full width of Fourth avenue between Fifty-sixth and Ninety-sixth streets.   Between Ninety-sixth street and Harlem river, the railroad structure was to be upon a viaduct and in a out inclosed by sidewalls with undercrossings between One Hundred and Second and One Hundred and Thirteenth streets inclusive, and overcrossings from One Hundred and Nineteenth street to One Hundred and Twenty-ninth street inclusive.   The said railroads crossed and were to cross the Harlem river slightly above high-water mark.   By this act the railroad companies were given the exclusive use and occupation of said road, and persons were prohibited from entering or passing upon the same, or any portion thereof under a penalty.   In 1890 an act of Congress was passed providing that the Secretary of War should cause the low bridges then crossing the Harlem river to be replaced by other bridges at the expense of the owners thereof *as soon as the necessary legislation*, if such legislation were necessary, should enable the change in grade to the approaches of said bridges to be made, the owners of said bridges to be allowed a reasonable time in which to complete the work necessary for such bridges, and said bridges to have a clear space between the under side thereof and the high water of spring tides of twenty-four feet.

To enable the railroad companies to comply with the act of Congress all that would have been necessary to be done, was to change the grade from One Hundred and Twenty-fifth street to the Harlem river, which would have been much less expensive to the companies than the plan hereinafter mentioned, provided for by the act of 1892.   But had this method been adopted, no part of Park avenue would have been returned to public use, and it would not have permitted the free and unobstructed passage of the intersecting streets from one side of the city to the other.

In 1892, in order to enable the said railroad companies to comply

with the requirements of the act of Congress, the Legislature passed an act changing the grade of the road from One Hundred and Sixth street to and over the Harlem river to One Hundred and Forty-ninth street, making in the act various requirements in respect to the plans, specifications and estimates for said work, and to the method in which the work should be done. The act further provided that when the plans, specifications and estimates should be made and filed as therein required, the expense and cost of the improvement should be borne and paid by the defendant, the New York and Harlem Railroad Company, or its lessee, the New York Central and Hudson River Railroad Company, and the mayor, aldermen and commonalty of the city of New York, in equal proportions as the construction of the said improvement progressed. The act further provided that when and as often as it should appear by the certificate of the superintending engineer of the work of said improvement, duly certified by a board provided to be appointed by said act, that the sum of $25,000 had been expended thereon by either of said railroad companies, specifying the portions and divisions of said improvement where the said expenditure had been made, the comptroller of the city of New York should draw his warrant, etc., for one-half of the same. The act further provided that in no event should the proportion of the cost of said improvement to be paid by the city of New York exceed the sum of $750,000, and that if the cost of said improvement should exceed the sum of $1,500,000, then the entire cost over and above such sum should be borne and paid for by said railroad companies. And, further, that said improvement structure and bridge should be exclusively for the uses and purposes of the railroad companies, and it should not be lawful for any person or persons other than a public officer in the execution of his duty as such, with his agents and assistants, to enter and pass upon or through the same, or any portion thereof, on foot or in any other way than in the proper cars of such corporation provided for such purpose, with the consent of such corporation, under the penalty of a fine, this provision being the same as that contained in the act of 1872.

It is urged upon the part of the appellant that the contribution imposed upon the city by the statute of one-half the cost of the

structure from One Hundred and Sixth street to the river, declared to be exclusively for the uses and purposes of a private railroad company, is illegal and in violation of the Constitution. And our attention is called to the provision of the Constitution which, so far as it is applicable to the question now before the court is as follows: "No * * * city * * * shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association or corporation, * * * nor shall any such * * * city * * * be allowed to incur any indebtedness except for * * * city * * * purposes."

The argument of the counsel for the appellant is that the statute under consideration provides that the city shall contribute practically to two material works: *First*, the construction of a railroad structure, which is expressly stated to be exclusively for the use of the defendant company, that is, the New York and Harlem or the New York Central and Hudson River Railroad Company, and, *secondly*, the filling in, regulating and paving under that structure of some space and street crossings from One Hundred and Fifteenth street to One Hundred and Thirty-third street, and making the same part of the public avenue; and that if the second purpose is not within the prohibition of the Constitution, yet if it has been so inextricably mixed in the statute with the first purpose, which is within such prohibition, that it is inseparable, and the entire provision is vitiated. It is further urged that in the case at bar, however, the purposes and objects are not so mixed as to defy judicial discrimination, either in principle or in fact, and, therefore, the unlawful can and must be set aside; for the provision, so far as it prescribes the contribution to the ostensible public work of filling in, regulating, etc., can be readily separated from the part imposing upon the city the payment of one-half the cost of the private railroad structure declared to be for the railroad's exclusive use and purpose.

We think, however, that in this statement of propositions the essential features of the improvement are lost sight of by the appellant. It is undoubtedly true that the expense attendant upon the opening, filling in, regulating and paving of Park avenue, released by the elevation of the defendant's railroad tracks, can be separated from the expense of building such elevated tracks. But this is by no means the whole of the improvement, nor is it the part of the

improvement in which the city is most largely interested. These railroad companies were in exclusive occupation of a part of the public streets of the city of New York. It was deemed by the Legislature advantageous to the city of New York that such occupation should cease, and that these portions of the streets should be restored to public use, and that the interruption of communication between the two sides of the city should terminate ; and they considered that the advantages to be derived from these changes and the others to be made by the railroad companies, which the Legislature had no power whatever to enforce upon said companies, were of sufficient importance to the city of New York to justify its payment of one-half of the expense of the improvement up to $750,000. It is entirely immaterial in the consideration of this question whether the railroad company owned the fee of the land which they occupied or not. For all practical purposes they were its absolute owners, and entitled to its absolute control and exclusive use for the purposes of their railroads. It was for the abandonment of these rights, and the expense of other constructions in their stead, that the city was authorized to make the payments provided for by the act.

The provision of the act, in regard to the payments to be made, that the certificate of the superintending engineer of the work of the improvement should specify the portions and divisions of said improvement where said expenditures had been made, was simply a method of determining as to how much money, under the provisions of the act, the city at any one time could be called upon to pay towards the improvement.

It was a matter of considerable moment to the city of New York as to whether unobstructed communication should be had between the different sides of the city from One Hundred and Fifteenth street to the Harlem river. The improvement was but one work. There were different things to be done in carrying out its design. But merely because a portion of the improvement required either the removal or the bringing upon the ground of earthy material, and another portion required the bringing upon the ground and the erection of iron structures, by no means segregated the parts of the improvement. They were, each and every of them, necessary parts of one design. The elevation of tracks, and the improving of the street were parts of the same work ; and it is to this one work

that the city contributes. Even though the claim that the city contributes to the private structure of the railroad were true, if in consideration of such contribution the railroad surrenders rights which it had to public streets and avenues, and the Legislature chose to permit the city to buy out such rights by contributing to the expenses incurred because of such surrender, we see no possible constitutional objection thereto. It is merely paying a consideration for substantial advantages supposed to be gained. And we have nothing to do with the question whether the Legislature directed the city to pay a high or low price for the privileges which it acquired, or made an improvident bargain thereof, if their value is of such a character that an absolute gift cannot be inferred.

Now, it is conceded by the argument upon the part of the appellant that the acquisition of the streets occupied by the railroad companies and the establishment of uninterrupted communication between the two sides of the city are matters of great value, but, it is contended, not of the value which the Legislature directed the city to pay. Into this inquiry we cannot enter.

It is further urged upon the part of the appellant that, while the act is substantially granting a new franchise and use to these railroads, it contains no provision for a conveyance by the roads to the city or even a quit-claim deed or release of anything they then owned. But this in no manner affects the question. It is undoubtedly true, as was so ably shown by the counsel for the appellant, that the use of the streets by the railroad company, being abandoned because of their right acquired for an elevated railroad, the land in the street formerly occupied by them naturally and legally reverted to the city for street purposes. The conditions remained the same whether there was a formal release or a release by operation of law. The railroad companies surrendered their rights and accepted a new franchise, and the Legislature authorized the city to pay them not to exceed a certain sum for so doing. As already stated, we see no constitutional objection to such a provision under the circumstances disclosed in the case at bar.

The order should be affirmed, with costs.

Follett and Parker, JJ., concurred.

Order affirmed, with costs.