SALAZAR v. NEW YORK & H. R. CO. et al.

(Supreme Court, Trial Term, New York County.    November, 1897.)

EMINENT DOMAIN—ELEVATED ROADS—ADDITIONAL BURDEN—COMPENSATION.
· Railroad companies, which had rightfully maintained a railroad in a street in front of plaintiff's premises, were, in consequence of certain river improvements, required by act of congress to replace their bridge over said river by a higher bridge, thus necessitating building an elevated railway structure in front of plaintiff's premises, which was provided for by state legislation placing the matter under the supervision of certain public authorities. *Held,* that the companies were liable to make compensation for injuries inflicted on plaintiff's property by reason of these changes in so far as they involved an inconsistent and excessive street use over and above the user which the companies had theretofore had in the street.

Action by Sophia Maria Elosua y Salazar, as executrix, etc., against the New York & Harlem Railroad Company and another, to recover damages for building an elevated railway structure in front of her property.    Verdict for plaintiff.

Bushby & Berkeley, for plaintiff.
Frank Loomis (Ira A. Place and A. S. Lyman, of counsel), for defendants.

FREEDMAN, J. (charging jury).    From the fact that I refused to dismiss the plaintiff's complaint, or to grant defendant's motion for the direction of a verdict, you must not infer that I thereby meant to rule that the plaintiff is to have a verdict under any circumstances. My rulings only went to the effect that, as a matter of law, the motions could not be granted, because there were questions of fact to be determined by the jury.    When the jury is called upon to determine a question of fact, it is self-evident that the jury may find either way, as they find the evidence to be worthy of belief, and that is exactly this case.    You may, therefore, find either in favor of the plaintiff or in favor of the defendants, as you find certain facts, which you must determine before you come to the ultimate question.    You are the

judges in the determination of these facts, and the responsibility of their determination rests with you. But at the same time you are bound to take the law as the court will lay it down for your guidance, and apply it to the facts as you may find them. It will not be necessary for you to consider in detail the precise rights of the defendants under the old deeds and maps which have been put in evidence. All you have to do with is what I shall give to you in general terms. The defendants rightfully maintained, pursuant to law, a railroad in front of plaintiff's premises on Park avenue, formerly called Fourth avenue, for more than 20 years prior to the acquirement of the title to the premises by the plaintiff, and used it continuously for general railroad purposes. If there had been no change in the situation as it then existed, the plaintiff would have no cause of action, although the traffic over the road and the number of trains over the same might have increased. But with time came a change. In consequence of certain Harlem river improvements, and especially the construction of the Harlem ship canal, congress passed an act in 1890 directing the secretary of war to cause the low bridges then crossing the Harlem river to be replaced by higher bridges; and this involved the railroad bridge of the defendants over the said river. The substitution of a higher bridge necessarily involved the approaches to the bridge. These matters led to legislation by the state of New York, and statutes were passed to regulate, improve, and enlarge Park avenue above 106th street; to provide for the passage of intersecting streets under the defendants' railroad structure; to elevate the said railroad structure, and to change the grade of the railroad; and for the construction of a new railroad bridge at an increased elevation over the Harlem river. Under these statutes, the defendants were not only authorized, but directed, to change and to elevate their railroad structure from 106th street north. Provision was also made as to all the details of that work, and as to the manner in which it was to be done, and for an inspection and supervision of the same by certain specified public authorities. For these reasons the altered structure of the defendants and its use cannot be considered a public nuisance. Nevertheless, and notwithstanding the fact that the defendants acted under lawful authority, and in a certain sense were even compelled to make the changes, the defendants are liable to make compensation for injuries inflicted upon private property abutting on the avenue by reason of these changes, in so far as the changes may have involved an inconsistent and excessive street use over and above the uses which the defendants theretofore had in and along the avenue. Of course, I make no decision concerning all properties abutting on the avenue between 106th street and the Harlem river. The rights of the defendants may be different in each block. But upon the facts before me concerning plaintiff's property between 116th and 117th streets, I feel bound to hold that the defendants are bound to make compensation if the property was injured, especially as in the case of Tocci v. Mayor, etc., reported in 73 Hun, 46, 25 N. Y. Supp. 1089, it was held that under chapter 339 of the Laws of 1892 the defendants surrendered their rights in the avenue, and accepted a new franchise for an elevated railroad. To the extent stated, but not beyond it, the defend-

ants may be considered and treated as trespassers upon plaintiff's property, if special damage has been established.    The period for which damages may be recovered by the plaintiff, if any have been sustained. must be limited to a period of time commencing in 1893, with the first inconsistent and excessive street use made by the defendants, as it will be presently defined by me, and the 13th of January, 1896, on which date the plaintiff parted with her title.  For more than 20 years prior to the period named the defendants had the public consent to use, and did use, locomotives for propelling their trains, and did run trains over their structure as it then existed; and hence no cause of action exists solely by reason of the fact that the operation of the road was continued in the same way during the period now under consideration, or that there was an increase in the traffic and in the number of trains running over the road.  Nor is there any evidence of a negligent construction or operation of the railway in consequence of the changes made; hence no damage can be given on the ground of negligence.    The liability of the defendants to the plaintiff, if any, arises solely from the following considerations:    For the period named the plaintiff had certain rights in Park avenue.    These rights consisted in the right of herself and her tenants to travel over the said avenue, to have free access to and egress from her premises, and to enjoy the light and air from the public street, subject only to the right of the public to use and enjoy the avenue as a public highway, for the legitimate uses and purposes of a public highway.    But these rights are limited in this case by the condition of Park avenue and the railroad uses in such avenue prior to 1893.    These qualified rights of plaintiff the railroad companies were bound to respect in making the changes to the elevated railroad, and no action of the legislature or the authorities of the city, nor the joint action of both, could absolve them from this duty.    Before the construction of the elevated railroads in this city the right of a surface railroad to use, without compensation to abutting owners, a public street in the city, was held to rest upon the theory that such a railroad company was part of the public, and that the use of the public street for the purpose of a surface railroad—though a new use—was not one which in itself was inconsistent with the proper and legitimate uses of the street by the public at large.    But the construction of a permanent structure within the limits of a street for the purpose of an elevated railroad must of itself be, and has been held to be, an inconsistent and excessive street use.    That being so, the defendants are responsible for the physical effects produced by the construction and maintenance of their permanent elevated structure in front of plaintiff's premises, by which plaintiff's premises were damaged, and which differed from the physical effects produced by the operation of the railroad prior to 1893.    During the period in question in this suit no trains ran upon the elevated structure.    But the plaintiff claims that, notwithstanding that, the bare existence of the structure increased the physical effects from the operation of the road.    It is for you to say whether or not that was so.    For similar reasons, any temporary structure erected or placed in aid of the construction of a permanent structure in front of or near plaintiff's premises must be treated like the permanent structure, provided it produced a like in-

jurious effect, but then only if, in fact, it constituted an inconsistent and excessive street use, and that is a question to be determined by you.

As regards the structures, the defendants cannot escape liability simply by reason of the fact that during the period in suit the permanent structure was not completed, and that both the permanent and the temporary structures remained in possession of the contractors. The defendants were parties interested in the contracts, and the work was done for their benefit, and, under the circumstances, they were legally bound to cause it to be done. If, therefore, the plaintiff has a cause of action, the defendants are liable, notwithstanding the fact that in point of form the work was carried on by and under the supervision of a board of improvements created by statute. On the other hand, the defendants can only be held for work so carried on which was a necessary part of their obligation to elevate their tracks and the grade of their railroad. They are not to be held for work which might have been done towards regulating or improving Park avenue, or any of the intersecting streets; and all damages, if any there were, from any such work, must be wholly disregarded. In this connection it may be well to point out that, so far as any infringement of the right of access is concerned, the access to and egress from plaintiff's premises had, prior to 1893, been rightfully curtailed by reason of the existence and operation of defendant's railroad upon four tracks in and along the center of Park avenue, and inclosed by a retaining wall on each side; and that for any such prior curtailment and its continuance during the period in question in this suit no damages can be awarded. To recover anything on this point, the plaintiff must show an increase of infringement over and above that previously existing, either by reason of the permanent structure or by obstruction of the avenue, by reason of the deposit of materials used in the construction of the elevated railroad, provided such deposit constituted an inconsistent and excessive street use within the rules laid down by me. So it must be constantly borne in mind by you that for all the physical effects produced by the operation of the railroad prior to 1893 no recovery can be had, and that, consequently, the plaintiff cannot recover for physical effects, or any of them, which continued during the period in question in this suit, even though there was an increase in traffic and in the number of trains, unless she has established, as material injuries, an increase of physical effects by reason of the construction and maintenance of the elevated structure.

The case, therefore, may be summed up as follows: That as to any uses by the defendants of Park avenue which did not materially abridge or obstruct the right to passage and repassage of ingress and egress, and to light and air of the plaintiff and her tenants, over and above their abridgement and obstruction, existing before 1893, the plaintiff has no cause of action. But for every material obstruction or use of Park avenue in excess of what it was prior to 1893, which was inconsistent with the legitimate uses of the avenue, whether it consisted of any structure, or smoke or steam or cinders emitted from the engines, or the passage of trains in general, and caused by reason of the existence of the elevated structure in or upon the plaintiff's premises, by

which the right of the plaintiff and her tenants to pass and repass, to free access to and egress from, the premises, and to enjoy the light and air from Park avenue, was materially affected, the plaintiff may recover for the period named by me, provided she has shown special damage therefrom. In this connection you must especially bear in mind that smoke, steam, and cinders, although thrown or cast into or upon plaintiff's premises, cannot constitute items in the consideration of damages, unless they were so thrown or cast by reason of the existence of an elevated railroad structure. The element of noise has to be treated in the same way. Noise did not sustain an action prior to 1893, and therefore the continuance of the noise since that time, from the operation of the railroad, even though increased by the increase of traffic and the number of passing trains, does not authorize the plaintiff to recover, unless the physical effects of it upon plaintiff's property were increased directly by the construction and maintenance of the elevated railroad structure. Therefore, in order to recover anything on account of the noise, the plaintiff is bound to prove that the construction and maintenance of the elevated railroad structure was the cause of it.

The measure of damages is the loss of rents from such portions of the premises as during the period in question were rented to tenants, and the impairment of the rental value of such parts of the premises during the period in question as were occupied by the plaintiff herself, provided the loss of rent and the impairment of rental value were caused by an excessive and inconsistent use by the defendants, within the rules laid down by me. So the said loss of rent and the impairment of rental value must be determined with reference to the condition in which the premises were, and with reference to the uses to which the premises were put, or could have been put, in the condition they were in. In this connection you should especially remember that the temporary trusses near plaintiff's premises were not put in position before July, 1894, and that even then none were placed directly in front of plaintiff's premises, and that the temporary structure was completed after that time. Also that the permanent structure in front of plaintiff's premises was begun in June, 1895, and completed in July, 1895, and that consequently plaintiff's damages, if any, could not have been so large before the occurrences referred to as they may have been subsequently. And in this connection you will further remember that the plaintiff parted with her title to the property in January, 1896.

No damages can be recovered in this action for any injury to the fee or selling value of plaintiff's property. The action is for loss of rents or impairment of rental value during a specified period of time. Upon this branch of the case it is your duty to see to it that every damage for which you wish to award compensation is shown by the evidence to have been the direct and natural result of an excessive and inconsistent street use by the defendants, over and above what it was in 1893. Losses occasioned by other causes must be wholly disregarded. Consequently, vacancies cannot be recovered for except upon proof that they were the direct and natural result of such acts of the defendants as to which they are liable. For the purpose of determining the

questions submitted to you, you have a right to look at all the facts and circumstances which appear in evidence, and which in any wise, no matter in how small a degree, bear upon the questions to be determined by you, inclusive of probabilities. The burden of proof is upon the plaintiff throughout, and she must establish a case, within the rules laid down by me, by a preponderance of evidence. If upon any point, which, under the rules laid down by me, is material to her cause of action, she presents an ordinary and evenly balanced case, or a case which does not come up to the requirements stated by me to be necessary to a recovery, the defendants are entitled to have the point decided in their favor. So, if the plaintiff has made out, within the rules laid down, a case of liability on the part of the defendants during the period in question, but the evidence which you find worthy of belief is of such a character that you cannot compute upon it what the loss of rents or rental value was during such period beyond a mere nominal amount, you will give to the plaintiff a verdict for nominal damages only. But if the plaintiff, within the rules laid down by me, has made out a clear and complete case, and you can compute the damages claimed with certainty, you will give her such a verdict as will fairly compensate her for the losses sustained, for which, under my charge, she may have compensation.

The fact that the defendants are wealthy corporations must have no influence on your minds. You are to decide the issues submitted to you as you would if the defendants were natural persons, and to that end you must endeavor to devest yourself of all prejudices, if any you should have. Beyond making compensation for the cause of action established within the rules laid down by me you cannot go. In no aspect of the case can you give punitive or exemplary damages, and any verdict which you may render in favor of the plaintiff may be rendered against both defendants for the amount, whatever it may be.