If, as a matter of fact, they had been sold, the defendants might have set it up as a defense to the claim that they had converted them. In that event the bicycles would not have been unlawfully detained. But upon the complaint itself no presumption arises that they were not still in the defendants' possession. The terms under which defendants received that possession required them to pay for the bicycles in 90 days after receipt of same. That payment they have neglected to make. Until paid for, each bicycle was at all times the property of the plaintiff, and there was clearly nothing in the agreement authorizing the defendants to retain them from the plaintiff after that period had expired. In my judgment the complaint avers facts from which a clear conversion appears, and the plaintiff's right to judgment should not have been denied upon the possibility that another fact existed which defendants might have set up by way of a defense.

The order should be reversed, with $10 costs and disbursements, and the motion for judgment granted. All concur.

(27 App. Div. 190.)

TAYLOR v. NEW YORK & H. R. CO. et al.

(Supreme Court, Appellate Division, First Department. March 25, 1898.)

1. EMINENT DOMAIN—USE OF STREET—RIGHTS OF ABUTTING OWNERS.

Where, under due authority, a railroad company lawfully builds an embankment along the middle of a proposed avenue, and maintains and uses it for its tracks for years before the avenue is actually laid out, and the avenue is then opened subject to the right of the company, the abutters take the benefit of the street, with the corresponding inconvenience and damage which accompany the existence of the railroad; and, so far as its existence at that time diminishes the value of adjoining property, that injury does not inflict any damage for which the company, then being lawfully in the street, can be held liable.

2. ADVERSE POSSESSION—RAILROAD RIGHT OF WAY.

The defendant (a railroad company), before exercising its authority to lay its tracks along a proposed avenue, procured from the former owner of the land, who had already conveyed the same to the city, a deed purporting to convey a strip along the middle thereof to the company. The owner had already conveyed the abutting land to plaintiff's predecessor in title. The company then constructed on the strip, with permission of the authorities, an embankment, which for more than 20 years, and up to 1853, it occupied for the operation of its railroad. *Held,* that its claim had ripened into a title by adverse possession, as against the abutting owner, in so far as it had occupied the land up to that time.

3. SAME—EXTENT OF RIGHT.

In 1872 the legislature required a change of grade, and authorized a change in the width and height of the embankment,—a change completed in 1875; and the embankment continued to exist without objection, except as subsequently increased in height, and to be used for the operation of the road, for more than 20 years. *Held,* that thereby the company acquired by adverse possession the right to maintain it to the extent to which it was used during that time.

4. SAME—ENLARGEMENT OF USER.

*Held,* further, that it could not, however, enlarge the user, nor claim by virtue of the adverse possession the right to the user as increased after the expiration of the 20 years.

5. EMINENT DOMAIN—RIGHTS OF ABUTTING OWNERS.

In 1892, under legislative authority, the embankment was reconstructed and heightened, but the company did not go into occupation of it. The recon-

struction was carried on, under the terms of the act providing for it, by a board which was appointed by the mayor, and had entire charge thereof, wholly independent of the company. While the embankment was to be used for the company's tracks, and it contributed, under legislative compulsion, to the expense, the entire work intrusted to the board was for the public benefit, and was not beneficial to the company. *Held*, that the defendant company could not be held liable to an abutting owner for damages resulting from the change in the embankment while the work was going on.

6. SAME—COMPENSATION—TEMPORARY USE OF STREETS.

The principle that where persons lawfully engaged in the construction of a public improvement are compelled temporarily. to inflict consequential damages upon the property of an adjoining owner, without actually trespassing upon it, such injuries are damnum absque injuria, and no action lies to restrain them, or to recover for the injuries inflicted, relates only to a necessity which is inseparable from the public construction itself, and but for which the construction either could not be made, or could be made only at a vastly increased expense, and considerably more inconvenience; and therefore the principle does not apply to a temporary structure erected and used in a public street by a railroad company for its tracks while its roadbed is being reconstructed by the public authorities, and for the public benefit.

Appeal from special term.

Action by Catherine Taylor against the New York & Harlem Railroad Company and others. Judgment for defendants, and plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Daniel J. Coughlan, for appellant.

Ira A. Place, for respondents.

RUMSEY, J. The plaintiff is the owner of a lot on the southwest corner of 109th street and Park avenue. She brings this action against the New York Central & Hudson River Railroad Company and the other defendants to restrain that company from operating its railroad along Park avenue, in front of her premises, upon an elevated structure erected on that street, and to recover damages she claims to have sustained because of the operation of its road thereon. The New York Central Railroad Company is the lessee of the New York & Harlem Railroad, and claims the right to operate its road under the authority which has from time to time been given to the latter company. That company was chartered by an act of the legislature in 1831, with authority to build a railroad from the north side of 23d street, at any point between 3d and 8th avenues, in the city of New York, to the Harlem river. In the plan for the laying out of streets on Manhattan Island adopted pursuant to the law of 1813, 4th avenue was shown as extending from 23d street northerly to the Harlem river; but for many years it remained a paper street, and not opened, and at the time when the Harlem Railroad was built the street had no actual existence north of 35th street, although it was recognized as a contemplated street, to be laid out in the course of time. The land upon which it was intended that the street should be laid out continued to belong to the original owners, and it does not seem that any effort was made by the city to acquire title to it for the purposes of a street for some years after it was originally laid out. Before 1825 a considerable tract of the land about 108th street, includ-

ing the land of the plaintiff, and the land upon which it was contemplated to lay out the avenue, belonged to one Benson, who had laid out lots abutting upon what was intended to be 4th avenue. On the 19th of November, 1825, Benson conveyed to the city the land within the boundaries of the proposed street, which was then 100 feet wide, and that deed was recorded very soon after it was delivered; so that from that time on the city had the title to the land in front of the premises which are now owned by the plaintiff, although it does not seem that it took possession of the property until the street was finally laid out, many years later on. In 1828 Benson conveyed the property now owned by the plaintiff, with other property in that neighborhood, abutting upon the lines of the contemplated street, to one Watt, from whom plaintiff claims title, and his deed was duly recorded; and after that Benson had no title either to the land within the lines of 4th avenue in front of these premises, or to the premises themselves which abutted upon the street as it was intended to be laid out. Such was the condition of the title to this property when the Harlem Railroad was located along the center of 4th avenue. As located in front of these premises, it was intended to be built, and was built, upon an embankment 26 feet wide at the bottom, and 24 feet wide at the top, upon which were constructed two tracks. Before constructing this embankment, however, the railroad obtained from Benson and other landowners conveyances in fee of land along the center of 4th avenue, 24 feet wide, for the purpose of constructing and operating a railroad thereon. The deed of the land in front of plaintiff's premises was made by Benson. This deed, however, was made to the company after the deed of the same premises had been made to the city by Benson, and when Benson had no title whatever to any of the land within the bounds of 4th avenue in front of the premises of the plaintiff. But the company, before constructing its road, made an agreement with the proper authorities of the city, by which was granted to it the right to build a road along the center of 4th avenue as it finally was built; so that, whether it acquired a title from Benson or not, it was undoubtedly lawfully in possession of the land whereon its tracks were laid. After the laying of the railroad tracks the legislature enacted that the width of 4th avenue should be increased from 100 feet to 140 feet, and for that purpose that 20 feet additional should be taken from the land of the abutting owners on each side when the street should be opened. In 1852 proceedings were taken to lay out 4th avenue to the width of 140 feet, and those proceedings were brought to an end by a final order for the opening of the avenue at that width in 1853. By those proceedings the city assumed to acquire title to the bed of the avenue for the width of 140 feet, "subject, however, to all the rights then possessed by the New York & Harlem R. R. Co. and its successors to maintain and operate its railroad in 4th avenue subject to all the provisions of the law relating thereto." After the completion of those proceedings the avenue was laid out, and became known as "Park Avenue"; and, as laid out, it was located on each side of the defendant's railroad, which occupied a ·space 26 feet wide along the center of the street for its whole length, thereby practically shutting up that portion

of the street so that neither the abutters nor anybody else could use it. Such was the condition of affairs until 1872, when the legislature assumed to require the railroad company to change the grade of its railroad, and authorized it to build four tracks instead of two. The width of the embankment upon which the road ran in front of the plaintiff's premises was then changed from 26 feet to 59 feet, and its height was materially diminished,—about 1½ feet. This change was completed in the fall of 1875, and the road continued to be operated upon the embankment thus constructed until the fall of 1894; but the embankment itself continued to exist in the condition in which it was then, and still exists in that condition, except that it has been made four feet higher, under circumstances which will be considered later. No objection appears to have been made by anybody to that increased width as it was made in 1875, but the railroad continued to be operated upon it without any objection or interference. In 1890 congress required that the bridges over the Harlem river should be raised so that there should be a clear space of 23 feet between the bridge and high water. The owners of the bridges were required to do this, but they were permitted to delay the work until they should receive the necessary legislative authority for that purpose. To carry that work into effect, the legislature in 1892 passed an act establishing a new grade for the defendant's railroad, and providing for its construction. Laws 1892, c. 339. This construction was begun pursuant to that act, and it is for the injury which the plaintiff claims to have sustained by reason of the change of grade, and of the manner in which it was done, that this action is brought. The court below decided that the plaintiff had suffered no damage because of the performance of the work, and for that reason dismissed the complaint, and from the judgment thus entered the plaintiff appeals.

Two grounds of damage are claimed: In the first place, the plaintiff insists that the increased height of the embankment upon which the railroad is permanently to run obstructs her easement of light and air to an extent greater than the defendants were authorized to do; and she insists that she is entitled to restrain the additional structure, and also to recover such damages as she may have sustained by reason of its existence at the increased height. It appears, too, that, for the purpose of enabling the railroad to run its trains while the height of the embankment was being increased, an additional structure was built upon each side of it, coming close up to the plaintiff's premises, which materially obstructed her easements of light, air, and access; and she claims that she is entitled to the damages which she suffered by reason of the existence of its temporary structure. These two claims will be examined in their order.

It is well settled in this state that the abutter upon a public street is entitled to the unobstructed use of the street as it was accustomed to be used, and to such easements of light and air as would naturally come to the premises which he owns, from the street as it was originally opened and used. Story v. Railroad Co., 90 N. Y. 122; Lahr v. Railroad Co., 104 N. Y. 278, 10 N. E. 528. Whenever the facts are like those shown to exist in the cases just cited, the nature and extent of the defendant's liability for an obstruction to the highway are estab-

lished, and it is unnecessary to be further considered here. But while the principle of those cases applies here, as in all other cases where the highway has been obstructed by an elevated structure, the extent of the liability is not necessarily the same in this case as in a case where the street was originally opened to its full width, and where the whole surface was used as a means of access by the abutting owners. In this case it appears that the railroad had been established, by the authority of the legislature, upon what was afterwards 4th avenue, for many years before that avenue had been opened, and that when it was opened the embankment of the railroad company existed in front of these premises, and that the street was opened subject to the right of the railroad to maintain its tracks as they were then; so that, while 4th avenue was opened as a street, it was never opened in such a way that the abutting owners had the full benefit of access to all parts of the street, as in those streets where no railroad had existed. If the embankment as then constructed interfered with their easements of light and air, such an interference was an essential accompaniment of the street as then opened, and the abutters took the benefit of the street, with the corresponding inconvenience and damage which accompanied the existence of the railroad along the center. While the principle of the Story and the Lahr Cases, therefore, must apply, the application is qualified by the essential difference in the manner of the opening of the street, and the purposes for which it was permitted to be used; and, so far as the existence of the railroad at the time of opening the street diminished the value of the adjoining property, that injury did not inflict any damage for which the railroad company, then being lawfully in the street, could be made liable. Before this street was opened, and before the railroad was erected, the company had received a conveyance in fee of land of the necessary width upon which to construct its road. It is quite true that, at the time it received the conveyance from Benson of the land in front of the plaintiff's premises, Benson had already conveyed the property to other persons; but the railroad company went into possession under the deed which it then received, and, as it then took the exclusive possession of the property conveyed to it, it must be deemed to have claimed the right to hold that property under the deed adversely to any other person. From 1832, when the railroad was built, to 1853, when 4th avenue was opened, the railroad company was in the exclusive possession of the land thus conveyed to it, operating a railroad upon it over land which might subsequently be converted into a street upon proper proceedings, but which up to that time was owned and occupied exclusively by itself and other private owners. This occupation of the railroad company was recognized in the proceedings opening the street, and the naked fee of the railroad company in the land, subject to the right to use it for a railroad, was taken by them. It must be deemed, therefore, that the claim of the railroad company to the ownership of this land which it assumed in 1832, after receiving the deed from Benson, had in 1853 ripened to a title by adverse possession, under which it had the right to hold this property as absolute owner, and in any construction that it made upon it up to that time it was doing what any other owner might do in the use of his own

property.   By the proceedings taken in 1872 the railroad company
took possession of a considerably greater portion of 4th avenue than it
had occupied before.   The embankment was more than doubled in
width, the increase being from 26 feet to 59 feet.   That was done
under the authority and by the direction of the legislature, and while,
therefore, it was not unlawful, so far as the entry upon the public
street was concerned, yet there is no doubt that under the principles
laid down in the Story and Lahr Cases, supra, any abutter had a rem-
edy if it injuriously interfered with the right of access to his premises
which he had before enjoyed, and to his easements of light and air.
But it seems that no complaint was made of this increase in the
width of this embankment, but the railroad company was permitted,
without objection, to continue it from the fall of 1875 until the com-
mencement of this action, on the 1st day of December, 1896.   The
occupation of the railroad company for this period of more than 20
years was under claim of right, and was certainly notorious, and ex-
clusive of the right of any other person in that portion of the highway
which it then occupied, and was authorized by law.   As to that em-
bankment, it has acquired by adverse possession the right to maintain
it to the extent to which it was used during that time, but it is limited
in this user to the right as exercised for that period of time.   It can-
not enlarge the user, and claim, by virtue of the adverse possession, the
right to the user as increased after the expiration of the 20 years.
Prentice v. Geiger, 74 N. Y. 341; American Bank-Note Co. v. New
York El. R. Co., 129 N. Y. 252, 29 N. E. 302.   Therefore the fact that
the railroad company has acquired the right to operate its road upon
an embankment such as it used from 1875 to 1895 is not necessarily
an answer to the claim now made, that the plaintiff has suffered an
increased injury because of the elevation of the new embankment to a
height greater than that at which it had been maintained before.
The defendant can acquire from the deed of Benson no right, as against
the plaintiff, to operate and maintain its railroad along the center of
the street, because when it received its conveyance from Benson he
was not the owner either of the street, a portion of which he attempted
to convey, or of the plaintiff's land which abutted upon the street; and
the case, therefore, is not within the case of Conabeer v. Railroad Co.,
84 Hun, 34, 32 N. Y. Supp. 6.   The deed from Benson, if useful to
the railroad company at all, can only be available as the foundation
of an adverse possession which seems to have been taken under it, and
so far as that possession was actually taken; but it is of no avail as
a grant of an easement in the land of an abutter who at that time was
an owner of his property claiming under Benson, by a deed which had
been actually recorded before the deed to the company.
   It appears, and is practically undisputed, that at the time this action
was begun, and even down to the time of the trial, the defendant was
not in occupation of the embankment as rebuilt under the law of
1892.   Indeed, it does not appear clearly how long the viaduct thus
built had been in existence.   The defendants insist that, as they were
not in possession of the embankment, they are not liable for the incon-
veniences, if any, which have resulted to the plaintiff because of its
existence.   It was erected under the authority of chapter 339 of the

Laws of 1892, which provided generally for changing the grade of the New York & Harlem Railroad, for building an embankment along Park avenue at the height of the grade thus established, and which contains full ·directions and regulations whereby this improvement may be carried out. But the statute does not give the railroad companies, or either of them, any authority to do this work. Section 13·creates a board, to be appointed by the mayor, whose duty it shall be to execute, direct, and superintend the construction of the improvement. That board is authorized and directed to take the entire charge of that improvement, and to carry it on in conformity with the provisions of the act. The board is to prepare plans of the improvement, to be approved by the 'commissioner of public works. All work is to be done, so far as possible, by contract. The contracts are to be made by the board, and the work, after being contracted for, is to be done under the supervision of the department of public works; and the commissioner of public works is to appoint inspectors and engineers to supervise it. The railroad companies are to have no control of the work, and no supervision of it, and no right to interfere with it in any way whatever. It was made to appear, without dispute, that this board of improvement, having organized, took charge of this work, and that it caused plans to be prepared by its engineers, and made contracts for the doing of the work, which were entirely independent of the railroad companies. This embankment, when finally finished, was to be used by the New York Central Railroad Company upon which to run its trains; but, while that company was to have the exclusive use of the embankment when finished, the work was not by any means exclusively for its bnefit. It was of great moment to the people of the city that Park avenue should be opened so that the communication along the lateral streets might be re-established, and those streets and Park avenue itself become more available for the public use. So far as this was the carrying out of a public work for the benefit of the city, it was within the power of the legislature to direct; and the city, in doing it, was engaged in a public work for a public purpose. Tocci v. City of New York, 73 Hun, 46, 25 N. Y. Supp. 1089. That work thus done for a public purpose was exclusively under the control of the board of improvement created by the statute. The change of grade was not the act of the appellants, but of the legislature, which imposed it and prescribed the manner in which it should be done. This, too, was done by the board created by the act, and was an essential part of their duty. That board acted in no way under the direction of the railroad companies, nor in conference with them. It was not at all responsible to them, nor were they in a situation to give any directions, either as to the work which should be done, or as to the manner of doing it. To that board alone was intrusted the entire control, subject to the supervision of the department of public works. It was to let the contract, and it did let the contract, for that work. Therefore, while the work was in process of construction, the railroad companies could not be in any manner responsible for it; and if the work itself was illegal, or if the manner of doing it was unlawful, no injunction addressed to them could prevent it, nor did they become responsible for damages which

occurred. Their responsibility only began when they undertook a part in the doing of the work, or when they began to use it. There is no pretense that the railroad companies undertook any portion of this work. So far, therefore, as the work was done by the board of improvement, or by its contractor, the railroad company cannot be liable for any damages resulting from it.

But it is said that the defendants were liable because the work was done for their benefit, and they contributed a certain portion of the money necessary to pay for it. It is quite clear, in our judgment, that the fact that they contributed under compulsion a certain portion of the expense of this work cannot in any way operate to render them liable for what was done by the board of improvement by way of building the embankment, for the reasons just before stated. But it is said that the work was done for their benefit. If by that is meant that they were to have the exclusive possession and exclusive use of it after it was finished, there can be no doubt that such was the case. But if it be meant that it was a work which was necessary, or even convenient, to enable them to operate their road on 4th avenue, the evidence conclusively disproves any such assumption. It appears from the terms of the act of 1892 that the grade of the road from 106th street ascends to 116th street, and from that point to 129th street it descends. The object of changing the grade was to raise it over the Harlem river, so that it is quite clear from the provisions of the act itself that the increased height of the grade up to 106th street, followed as it was by a descending grade to 129th street, could be of no benefit to the railroad companies, to enable them to raise the grade of the road at the Harlem river so as to cross the bridge at an increased height, because at 129th street the grade is the same as the present grade, and the railroad might have reached that point at its present grade before it was necessary to commence to ascend to get over the Harlem bridge. The evidence of the engineers upon that subject corroborates this inference, for it is made to appear by them that the original intention of the railroad company in raising the grade was to begin at 125th street, and that it was not necessary to begin lower down than that point; and it is conclusively established in this case that the change in grade from 125th street sought was for the convenience of the people of the city living along the avenue, to give them conveniences for getting across it, so that it cannot be said in any way that this change of grade in front of the plaintiff's premises was at all for the benefit, either actually or legally, of the defendant railroad. It was found by the court below that no damage had resulted to the plaintiff for which defendant was liable from the change in the viaduct during the time that this work was going on, and, so far as the embankment was concerned, we think this finding in that regard was correct.

But a different question is presented by the temporary structure which was used by the defendant for the operation of its road during the building of the permanent viaduct. It appears that the contract for erecting this structure was awarded on the 15th of March, 1894. The temporary structure was begun on the 1st of April, 1894, was completed in August of that year, and the trains of the defendants commenced to run upon it in September, 1894, and continued

until January or February, 1897. It is established that this structure was built on each side of the permanent embankment; that it occupied the street at about the height of the second-story windows of the plaintiff, from the embankment to the sidewalk; and that it interfered to a very considerable extent with the access to the plaintiff's premises, and with her easements of light and air. There can be no doubt upon the evidence that during the existence of this temporary structure the plaintiff and her tenants suffered considerable inconvenience from the operation of the defendant's trains upon it, and that the rental value of her premises was diminished during that time. It appears that this temporary structure was erected by the board of improvement upon contracts made by them and under their direction, and that the defendants had no control whatever over it until they commenced to use it in September, 1894. It does appear, however, that from that time until January or February, 1897, it was used by them for the operation of their trains, and that many trains daily ran over it. The defendants seek to escape liability for this use of this structure, for the reason that it was a temporary structure, necessary to be built for the purpose of doing the work upon the embankment, and therefore that it comes within the rule established in the case of Atwater v. Trustees, 124 N. Y. 602, 27 N. E. 385, that where persons lawfully engaged in the construction of a public improvement are compelled temporarily to inflict consequential damages upon the property of an adjoining owner, without actually trespassing upon it, such injuries are damnum absque injuria, and no action lies to restrain them, or to recover for the injuries thus inflicted. The rule itself is well established, and is essential in the construction of public works by municipal corporations or by public authority, but we think that this case is not brought within that rule. It does not appear here that this temporary structure was necessary for the construction of the work. So far as it appears, it was not used for that purpose. It was built and was used by the defendants for running their trains at a time when in the construction of the work they were excluded from the occupation of the embankment over which they had been accustomed to run them. This occupation was for their own private purposes and their private benefit. There is no pretense that the work itself might not have gone on if the temporary structure had not been built. But it is said that while the work was going on the trains could not be run. Undoubtedly that is so, but the running of the trains, so far as the plaintiff was concerned, was not a public purpose inseparably connected with the building of this structure. It was convenient for the defendants to run their trains. It was of great importance to those persons who had occasion to use their road that the trains should be run. But the necessity of operating a railroad is not the necessity which is intended in the Case of Atwater, and like cases, which authorize the infliction of damage upon an adjoining owner in the construction of a public work. That necessity must be one which is inseparable from the construction itself, and but for which the construction either could not be made, or could be made only at a vastly increased expense, and considerably more inconvenience. If the temporary con-

50 N.Y.S.—45

struction is simply to enable a person to carry on his private business without inconvenience, the principle does not apply, because there is no reason why one person should be subjected to inconvenience and damage during the construction of a public work in order that some other person may more conveniently carry on his own private business and use his own property. The use of this temporary structure for the purpose of running trains upon it was an obstruction of the street greatly in excess of anything which the company had previously done, and was beyond its power. Fobes v. Railroad Co., 121 N. Y. 505, 24 N. E. 919. And for the obstruction thus caused the defendants are liable (Sperb v. Railway Co., 137 N. Y. 155, 32 N. E. 1050), because of their adoption of it by using it. For this reason we think that the court erred in the conclusion which it reached as to the right to recover damages for the operation of the temporary structure, and for this error the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

.VAN BRUNT, P. J., and BARRETT and McLAUGHLIN, JJ., concur.

INGRAHAM, J. (concurring). There are two separate structures described in the complaint,—one, a temporary structure erected over the avenue between the sidewalk and the old structure operated by the railroad company in the middle of the avenue; and the other is the permanent structure of the defendants' road, erected in the middle of the street. The question differs as to these two structures, and as to whether or not the erection or maintenance thereof was an appropriation of the plaintiff's property, which consisted of an easement of light, air, and access in the avenue. It is first, however, proper to say that I do not think that the defendants could acquire a title to this property, or right to use this avenue, or any portion thereof, by virtue of the conveyance from Benson to the defendants. After 4th avenue had been laid out as a street, in pursuance of chapter 115 of the Laws of 1807, Benson caused a map to be made of his tract of land, which included the plaintiff's premises and the avenue in front thereof, and upon which map 4th avenue was shown then to be of the width of 100 feet, as laid out by the commissioners under the act of 1807; and on November 19, 1825, Benson conveyed to the mayor, aldermen, and commonalty of the city of New York the parcel of land situate within the limits of the streets which were owned by him, including 4th avenue, opposite the premises in question. This deed was recorded on the 6th day of December, 1825, and vested in the city the fee of the land included within the avenue. It was not the mere dedication of a street or highway that would require an acceptance by the city before it became effectual, but a conveyance of the fee of the property to the city, which appears from the record to have been absolute upon its face. On November 12, 1828, Benson conveyed to Archibald Watt, the plaintiff's grantor, a plot of land bounded upon 4th avenue, between 108th and 109th streets. By the description of the property conveyed, whatever right Benson had to the fee of 4th avenue passed by that deed to the

grantee.  Benson therefore had no title to this land constituting the fee of 4th avenue when he executed and delivered his deed to the New York & Harlem Railroad Company, and that deed was ineffectual to convey to the company any title to that property, or right to use 4th avenue.  The right of the railroad company to use 4th avenue for the purpose of its road was acquired under the resolution of the board of aldermen dated February 1, 1832.  That resolution provided that "the New York & Harlem Railroad Company be and are hereby authorized to take possession of the ground owned by the common council, over which the line of said railroad is ordered to be constructed, and that they be permitted to use the same during the continuance of the present charter for the purpose of a railroad, and that only, and when they cease so to use it it shall revert to the corporation."  The situation of the property at the time of the original construction of the railroad, therefore, was as follows: The city owned the fee of 4th avenue as grantee of Benson, and it had authorized the defendant railroad company to take possession of the ground over which the line of the said railroad is ordered to be constructed, and permitted it to use the same during the continuance of its then charter.  This was a mere easement or license, vesting the railroad company with no title to the land, and certainly ineffectual to convey to the railroad company any right that the plaintiff had to the avenue.  Under this permission of the common council the railroad company built its road, and for upward of 50 years has maintained and operated it.  At the time, however, of this permission to the railroad company to use this land, the city owned it in fee, free from any easement or right of the owners of the abutting property. The grant from Benson to Watt was, of course, subject to the right that the city had acquired to the fee of 4th avenue; but by that grant the city had been vested with the unqualified fee of the land in the bed of 4th avenue, and I know of no rule that would prevent the city from using that property for any purpose that it saw fit.  When it authorized the New York & Harlem Railroad Company to use it for its railroad, it appropriated no property of the plaintiff's grantor; and I do not think that either the city or the railroad company were liable then in any action, either in equity or at law, by the plaintiff's grantor, for the use that they made of this strip of land which had been conveyed by Benson to the city.  Under this authority from the city the railroad company built its structure in the middle of what was laid out as 4th avenue.  Its right to build that structure was not then challenged by the plaintiff's grantor, nor has the right of the railroad company to use that structure been challenged at any time down to the commencement of this action.

The next important question is as to the effect of the condemnation proceedings instituted on behalf of the city to open this avenue then, under legislative authority, of the width of 140 feet.  To that proceeding the New York & Harlem Railroad Company was a party, and it would appear that an award of one dollar was made to it. That proceeding did not affect the right of the railroad company to operate its road upon the part of 4th avenue then occupied by it. By these proceedings, however, this strip of land known as "Fourth

Avenue," from 108th to 109th streets, became opened as a public street, the fee of which was held by the city of New York in trust, to keep the same as a public street, except so far as the same was then in actual use and occupation by the railroad for the purpose for which it was incorporated. The structure then existing, and which was continued down to the year 1872, was a little over 22 feet in height above the grade of 4th avenue, and was about 26 feet in width, and upon this structure were placed two tracks. Subsequent to the year 1872, under an act of the legislature the railroad company increased that structure to a width of about 59 feet; but the height of the structure above the grade of 4th avenue was decreased about 18 inches, so that the grade of the railroad, subsequent to the reconstruction of the road under the act of 1872, was about 18 inches lower than the grade as it existed prior to that change. No complaint was made by the plaintiff as to this change of structure under the act of 1872, and it is quite apparent that that structure appropriated no property of the plaintiff, or that was appurtenant to the plaintiff's abutting property. As it was lower than the previous structure, it excluded no more of the light and air than the previous structure; and the mere fact that it occupied a greater portion of the street was not an appropriation of the plaintiff's property, as the plaintiff had no property in the street, except an easement of light, air, and access, and neither the light, air, nor access to the plaintiff's property was interfered with by this enlargement in the width of the defendant's roadbed.

We now come to the addition to this structure made under the provisions of the act of 1892. So far as the permanent structure built under that act of 1892 is concerned, I fail to see any evidence that it was a substantial injury to the plaintiff's property, or to the easement of light, air, and access appurtenant to her abutting property. Under the right acquired originally by the defendant, it was entitled to use an embankment or structure 18 inches higher than its structure erected under the act of 1872. The structure that was actually erected under the act of 1892 was about 4 feet and 3 inches higher than that constructed and in use under the act of 1872, thus building it higher than the original structure which the railroad was authorized to use under its agreement with the city by something less than 3 feet; and I do not think that this addition of 3 feet to the height of this structure had any appreciable influence upon the light or air appurtenant to the plaintiff's property, or can be said to cause it any injury. There is certainly no evidence in the case to show it did interfere with plaintiff's easement. A court of equity will not interfere, with its mandatory process, to restrain such a use of a street, unless it is apparent that a substantial injury has been occasioned to the abutting property; and this addition made to a structure then lawfully existing, and to which the plaintiff's abutting property is subject, seems to me too trivial to justify a court of equity in issuing an injunction, leaving a party who claims to be injured by such structure to his action at law. The right of the railroad company to erect its temporary structure, however, presents a different question, and I am inclined to think that the plaintiff had a cause of

action to enjoin the erection or maintenance of that structure, so far as it interfered with her property rights in the street. The street on each side of this structure used by the defendant railroad was an open, public avenue, laid out under the act of 1807, before cited, and, upon the completion of the proceeding to open 4th avenue, that part of the avenue was held in fee by the city of New York, in trust for a public street. As to that part of the avenue not occupied by the permanent structure of the railroad company, the plaintiff had an easement, as appurtenant to her abutting property, of light, air, and access; and, such an easement being her property, she could not be deprived of it by either the public, or a railroad company acting under public authority, except upon payment to her of compensation; and I see no reason why a structure which is temporary in its character, but which would last for years, and which appropriates a person's property for the period that it is used, is not as much an appropriation of property as where the structure is permanent. This structure was an appurtenance of the plaintiff's easement in the avenue, and if the railroad company wished to use the plaintiff's property in this avenue for a railroad, whether such use was a permanent or temporary use, it was bound to pay her for such use, or in the absence of such payment the plaintiff was entitled to appeal to a court of equity to enjoin such an appropriation of her property. Upon the trial it was shown that the temporary use for which this structure had been constructed was at an end, and, while the structure itself had not then been removed, it was stated on the argument before us, without contradiction, that at the time of the argument it had been removed, and the appropriation of the plaintiff's property upon this portion of 4th avenue not covered by the permanent structure had ceased. That the defendant is responsible for the construction and operation of this temporary structure seems to me to be clear. By section 12 of chapter 339 of the Laws of 1892, "the New York and Harlem Railroad Company, or its lessee, the New York Central & Hudson River Railroad Company, during the making of the change in the elevation of the aforesaid structure and bridge, is authorized to construct a temporary bridge over the Harlem river, and to maintain such temporary structures as may be found necessary for the operation of its road, and to occupy any part or parts of any public streets or avenues in the city of New York necessary for such purpose." It was under this authority that this temporary structure was built, and whether it was built by the railroad company itself, or by the commissioners appointed by the act for the benefit of the railroad, and used by the railroad during the change in the permanent structure, the railroad company was a joint trespasser with the commissioners in maintaining such structure, the structure being for its benefit; and it was therefore liable to any action to abate the trespass, or to recover damages for it. It may be that the commissioners under whose contract the structure was erected, or the city of New York, who appointed the commissioners, would be proper parties to an action brought against the railroad companies; but the objection that neither the commissioners nor the city of New York were parties to the action was not taken by the defendants,

either by demurrer or answer, and it was therefore waived. The facts alleged and proved showed that the plaintiff was entitled to damages for the maintenance of this temporary structure, and, although the removal of the temporary structure would eliminate the equity cause of action, the plaintiff is, I think, entitled to have her action tried now as an action for damages against the railroad company for the injuries sustained by the erection and maintenance of this temporary structure. The court below denied the plaintiff equitable relief, but it should have either proceeded to assess the damages for that temporary structure, or, if either party demanded a trial by jury, should have sent the action to be tried at the trial term. I do not think that the railroad company can claim to hold this land under the Benson deed by adverse possession. It went into possession under this license from the city. The holding under such a license from the city could not be adverse to the city. I do not think it necessary to discuss in this case the liability of the city for the structure erected under chapter 339 of the Laws of 1892. So far as a temporary structure was concerned, as before stated, the railroad company was authorized by the act to maintain such a structure. It was erected under such authority, granted, not to the commissioners, but to the railroad company, and it is clear that they are liable for any damage that it caused. I concur, therefore, with Mr. Justice RUMSEY in the reversal of the judgment.