plaintiff having put defendant to the alternative of losing his services or of discharging this bookkeeper, and defendant very reasonably elected to retain the latter. It is to be remembered that the business was not now under the plaintiff's proprietorship, but was owned by the defendant, and for the plaintiff to dictate to defendant upon the question of retaining a co-employé was wholly without warrant. Had the plaintiff been compelled to leave the business because of acts of the defendant which were calculated to impede the ultimate success of the undertaking and to render the plaintiff's efforts useless, the cause of action would have support; but here it appears that defendant conducted himself throughout with a view only to the best interests of the business, and uniformly treated the plaintiff with extreme fairness. Excuse for the plaintiff's nonperformance of the alleged agreement cannot, therefore, be found in the facts, and there should be judgment for the defendant for the dismissal of the complaint upon the merits, with costs.

Judgment for defendant, with costs.

---

(25 Misc. Rep. 13.)

LEWIS v. NEW YORK & H. R. CO. et al.

(Supreme Court, Special Term, New York County. October, 1898.)

1. ELEVATED RAILROADS—OBSTRUCTIONS TO LIGHT AND AIR—DAMAGES.

An elevated railroad company is liable for obstructions to light and air to owners of property adjoining the road, which was erected by a legislative commission, caused by its use of the structure, and also of the temporary structure which was employed for the passage of trains while the elevated structure was building, though it participated, in a subordinate capacity, in carrying out the design of the commission.

2. SAME.

Where a surface railroad running through a street was changed to an elevated road, in estimating the damages to adjoining property owners for obstructions to light and air caused by the elevation of the tracks the benefits derived from increased access to their premises should be considered.

Action by Mary I. Lewis against the New York & Harlem Railroad Company and others. Judgment for plaintiff.

S. S. Gowdey, for plaintiff.
A. S. Lyman, for defendants.

DALY, J. This action is brought to enjoin the defendants from maintaining and operating their elevated railroad in front of the plaintiff's premises, and for damages for such operation from February 1, 1895, to the time of trial. The premises in question, No. 1613 Park avenue, are situated on the easterly side of the avenue, between 114th and 115th streets, and are 25 feet wide in front and 80 feet deep. The building is a five-story structure; the ground floor being divided into two stores, and the other floors rented as flats. The case involves many of the questions that were settled in Taylor v. Railroad Co., 27 App. Div. 190, 50 N. Y. Supp. 697, and Welde v. Railroad Co., 28 App. Div. 379, 51 N. Y. Supp. 290, which were similar actions by abutting property owners on the same avenue, but whose premises

were situated, respectively, below and above the premises in suit,—the former near 109th street, and the latter near 125th street. In this case an attempt is made by both parties to reopen some of the questions that were decided in the former cases, but the considerations urged in that regard should properly be presented to the appellate court. I am constrained to follow the general rules laid down by the appellate division, and which are favorable to the plaintiff's cause of action in some respects. Plaintiff urges in addition, however, that the facts proved upon this trial show such a participation on the part of the defendants in the erection of the structure complained of as to bring them within the rule laid down by the appellate court in the case first cited, where it is said that their responsibility would begin "when they undertook a part in the doing of the work," as well as "when they began to use it." The evidence, while showing that the defendants participated in carrying out the design of the state commission, which had the work in charge, completely fails to show that in any respect the work of the commission was interfered with by the railroad, or that the participation of the railroad in the work was not entirely subordinate to the commission. The latter had exclusive control of the work throughout, as it was intended by the legislature that it should. The liability of the defendants, in my opinion, arises solely from their use of the elevated structure, and also of the temporary structure which was employed for the passage of trains while the elevated structure was building. This is clearly established by the authorities quoted, and the plaintiff is undoubtedly entitled to recover such damage as was occasioned by the presence of the temporary trestle while the defendants' trains were operated upon it, and for the presence of the permanent structure when the operation of trains was commenced thereon. I regard the effect of the temporary structure, situated, as it was, close to the plaintiff's building, and causing, therefore, more annoyance, by the close proximity of passing trains, as much more serious than any effect of the permanent and central viaduct, after the removal of the temporary structure. This permanent central viaduct occupies a space less than 60 feet in width in the center of the avenue, which is 140 feet wide. The structure is 35 feet high, and is supported on steel columns, which leave the surface of the street free for passage from side to side, and give uninterrupted traffic through the side streets. Before this elevation of the tracks was made, the railroad was operated upon a masonry embankment some 7 feet high through the center of the avenue, which cut off access from one side of the avenue to the other, and to 114th and 115th streets on the west. The change which has been made in the defendants' railroad structure, and of which the plaintiff complains, leaves the plaintiff the use of the whole width of the avenue in front of her premises, and for some distance north and south,—a decided advantage over the condition of the avenue and railroad for many years before. I regard the benefit derived from this unobstructed use of the whole avenue as offsetting in great measure the obstruction to light and air caused by the elevation of the tracks; so that, while the latter easements have been impaired, access to the premises from the avenue and the neighboring avenues has been in-

creased.     The great width of Fourth avenue (140 feet) yields more light and air to the abutting houses, notwithstanding the elevated railroad structure, than are enjoyed by the residents upon any other of the city avenues where there are elevated railroad structures, and there is no street having such an incumbrance in which the interference is less with the comfort of the dwellers on either side.     Fourth avenue has always been incumbered by a permanent railroad structure, and the change now made has its advantages as well as its disadvantages.     My judgment is, in view of the circumstances, an allowance of $750 for fee damage will cover all the loss over and above the benefit. The most serious infliction upon the plaintiff was the operation of the railroad upon the temporary structure while the central viaduct was in course of construction.     This temporary structure was a trestle built between the lawful bounds of the railroad and the curb line, and which for a certain period deprived the plaintiff, to a great extent, of the light and air and access to which she was entitled, and without any corresponding benefit.     She is entitled to recover from the railroad damages for loss of rental value due to its use of that temporary structure from the time she acquired her property until such use was discontinued, on February 15, 1897,—a period of two years,—and I allow her $600 for such loss.     She is also entitled to damages for the use by the railroad of the permanent structure from the latter date to the time of trial.     Damage from this source, however, is very much less than that caused by the temporary structure, and $100 is allowed upon that account.

Judgment for plaintiff accordingly, with costs, and a 5 per cent. extra allowance on the above sums.

Judgment accordingly.