insurance companies upon the lives of husbands for the benefit of their wives are thus legislatively ordained to be assignable. But no other or different method of realizing a provision for the benefit of wives and children, to accrue upon the death of their husbands and fathers, is taken out of the case rule, or withdrawn from its protection. In cases not specifically embraced within the acts of 1878 and 1879, the principle stated in Eadie v. Slimmon still governs. Romaine v. Chauncey, 129 N. Y. 566, 29 N. E. 826. It was there, in effect, held that a wife's alimony was not assignable.

"It is," said Finch, J., "a specific fund provided for a specific purpose, with restraint and limitation written all over its face by the very law and decree which brought it into existence. And here I think we may wisely avail ourselves of one of the analogies which the general term opinion has furnished for our use. Policies of life insurance in favor of the wife on the life of the husband we have persistently held to be nonassignable. We determined that their peculiar character and purpose necessarily took from them the chief and most important characteristic of property in general. * * * We took from them the transferable characteristic of property as such, and tied them closely to their lawful object and purpose. The argument made now would convict us of error then. * * * It does not, therefore, answer the view we have taken of the duty of the court in this case to appeal to the general law of property, and the general duty of the court in respect thereto. The question concerns a species of property of a peculiar and specific character, created and existing for one purpose only, and whose express limitations take it out of the general rule."

The result of this reasoning is that the attack made by the appellant upon the by-laws is without merit. These by-laws are not contrary to, but are in entire accord with, the public policy of this state. They contravene neither its statutory nor common law. On the contrary, they are well adapted to give due effect to the policy expressly ingrafted upon the defendant's charter by the act of 1882, already referred to and quoted. The assistance contemplated by this gratuity fund would readily be defeated were the beneficiaries permitted during the life of the member to devest themselves of a provision made solely for their needs when deprived by death of their natural protector. The view which has been pressed upon us that nonassignability must lead to grave consequences should the raising of money by assignment become essential to save a member from losing his seat, seems far-fetched and trivial as against the supreme purpose and policy of providing an assured fund for the family after death.

There are no other points which call for special consideration. The judgment appealed from was right, and should be affirmed, with costs. All concur.

---

LEWIS v. NEW YORK & H. R. CO. et al.

(Supreme Court, Appellate Division, First Department. May 5, 1899.)

1. ADVERSE POSSESSION—LIMITATION OF USER—RAILROADS—STREETS.

Where a railroad went into possession of a portion of a street under a deed, and subsequently made encroachments beyond the limits of the grant, to which it acquired title by prescription, the rule applies, as to the whole, that the railroad is limited in the user to the right as exercised during the period of limitation.

**2. EMINENT DOMAIN—VIADUCTS—DAMAGES TO FEE.**

A railroad originally maintained an embankment 7 feet high through a street. This was removed, and a structure set on girders 36 feet high was substituted. This permitted the opening of the cross streets on each side of an abutter's property; but a solid flooring 54 feet broad and 35 feet from the ground shut off much of his light, and the vibration from passing trains became much greater, making the windows rattle, knocking off plaster, and cracking the ceilings. *Held*, that $750 damages to the fee was proper.

**3. SAME—RENTAL DAMAGES.**

Considering the benefit from opening the side streets, an award of $100 for rental damages for 15 months to time of trial was not insufficient.

**4. SAME.**

Pending the erection of a viaduct in a street, a railroad erected a temporary track, surrounded by a fence which came within 10 feet of the lot line, entirely blocking the street. There was much more dirt, smoke, noise, and vibration than before, and light was seriously obstructed from plaintiff's property. Tenants moved, and refused to stay, despite reductions in rent. The amount of vacancies during the obstruction, at the rent charged, was over $1,000. *Held*, that $600 for rental damages was proper.

Van Brunt, P. J., dissenting.

Appeal from special term, New York county.

Action by Mary J. Lewis against the New York & Harlem Railroad Company and others. From a judgment for plaintiff (54 N. Y. Supp. 434), both parties appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

James C. Bushby, for plaintiff.

Ira A. Place, for defendants.

O'BRIEN, J. The plaintiff seeks to enjoin the operation of the defendants' road in front of her premises, on Park avenue, and also to obtain damages resulting from the operation of the road. The claim she presents on this appeal is that the damages awarded are inadequate. On the part of the defendants, questions are presented bearing upon their liability for any damages. The facts connected with the placing of the railroad in the avenue, and most of the questions in issue on this appeal, will be found in two decisions of this court made in similar actions brought by abutting property owners on the same avenue. Taylor v. Railroad Co., 27 App. Div. 190, 50 N. Y. Supp. 697; Welde v. Same, 28 App. Div. 379, 51 N. Y. Supp. 290. The defendants desire to reopen a subject which was involved upon the' former appeals; claiming that it was overlooked, and that, if considered, it would preclude a recovery in this or any similar case. This is with reference to the distinction to be observed between taking possession under a deed, and possession without a deed; and the defendants assert that, in the former appeals, most of the argument. was based upon the theory that their rights were acquired by adverse possession. With respect to this question, all that need be stated is that, although the railroad had originally entered into possession under a deed of a portion of the avenue, it subsequently made encroachments beyond the limits fixed in the deed, and to that extent obtained, as to such portion, title by adverse possession; or, differently expressed, the claim of the defendants is that by virtue of the deed by Benson, and more

than 20 years' adverse possession thereunder, the railroad has ac-
quired the right, as against the plaintiff, to maintain and operate
the railroad structure, under chapter 339 of the Laws of 1892, and
the amending act.　Referring to the stone viaduct upon which the
defendants had operated their road for 20 years, it was said in the
Taylor Case, supra:

"As to that embankment, it has acquired by adverse possession the right
to maintain it to the extent to which it was used during that time, but it is
limited in this user to the right as exercised during that period of time.　It
cannot enlarge the user, and claim, by virtue of the adverse possession, the
right to the user as increased after the expiration of the twenty years."

It is insisted by the defendants that the cases cited in support of
the portion of the opinion quoted show that questions of rights by
prescription alone were involved; that is, the right claimed by pre-
scription, and not under a written instrument of any kind.　We
fail, however, to see how the defendants are to derive any comfort
from the circumstance that the cases cited were upon the rights
by prescription alone, because, beyond the property originally ac-
quired under the Benson deed, the rest of the property used and
occupied by the railroad was obtained by adverse possession,
wherefore, in the change that was made to a new structure under
the act of 1892, the right of the railroad was limited by the extent
of its former user of the avenue, held partly under the Benson deed,
and partly by adverse possession.　While, therefore, it was entirely
lawful for the railroad to use the original property obtained under
the Benson deed, so that no right to damage would accrue to abut-
ting owners if the height of the structure was increased within
the lines of such original grant, the same rule does not hold with
regard to the portion of the structure outside the terms of the deed,
because, having been obtained by adverse possession, the rights of
the railroad therein are limited by the extent of its user; and where
it undertakes to operate the road upon a structure that is greater
in height, and may be in other ways more injurious to the abut-
ting owner, to that extent such owner is entitled to recompense.
We think, therefore, that the learned trial judge did right in award-
ing damages.　Whether the same were excessive, as claimed by
defendants, or inadequate, as claimed by plaintiff, may be briefly
considered.

The original structure, erected under chapter 702 of the Laws
of 1872, was only 7 feet above the level of the avenue; the tracks
being only 3 feet above it.　The new, permanent structure is, meas-
ured to the top of the railings, 36 feet above the bed of the avenue,
and comes up to the fourth-floor windows of the premises in suit.
Thus, the present structure is five times higher than the old.　It
is, however, not a solid mound, like the old embankment, and great
stress is laid upon this fact.　But that a structure set on girders
may cause serious injury has been repeatedly shown in the Ele-
vated Road Cases.　This structure, however, seems much more ob-
jectionable than the elevated structure.　Above the girders, which
measure 7 feet and 2 inches vertically, is a solid flooring 54 feet
broad and 35 feet from the ground.　It is quite apparent that all

the light that can reach the premises under and through this solid roadbed does not amount to much.  Witnesses for plaintiff testify that the new, permanent structure is more objectionable than the old, in that it keeps out more light, and the vibration from passing trains is much greater, making the windows rattle, knocking off the plaster, and cracking the ceilings.  On the other hand, as a result of the Park avenue improvement, 114th and 115th streets have been opened for the first time at this point, and the property has been improved to that extent.  The trial judge allowed for such benefit, and except for this allowance, the plaintiff might fairly have received much more for fee damages.  The award of $750 for fee damages seems, on the whole, justified.

As to the rental damage, for the period during which the temporary structure was used for the passage of trains, from February 1, 1895, to February 16, 1897, the sum of $600 was awarded; being at the rate of about $294 a year.  This temporary structure was built on both sides of the old embankment, and came close up to the plaintiff's premises.  It was surrounded by a fence, which was only 9½ feet from the plaintiff's curb line.  The street was entirely blocked, so that wagons could not pass through it.  There was evidence that the light was obstructed much more seriously, and that there were much more dirt, smoke, noise, and vibration, than formerly.  The amount of vacancies during this time amounted, at the rates charged, to over $1,000.  And there was evidence that tenants moved on account of this new structure, and would not stay, although offered reductions in rent.  Premises, however, are seldom entirely full, and the plaintiff's expert claims only $918 of rental damage during this period.  The trial court seems to have chosen a fair medium in awarding $600.

There is an award, also, of $100 for the period from February 16, 1897, when trains began to run on the new, permanent structure, to May 9, 1898, the date of the trial.  This award is the one most open to criticism, because of the damaging nature of the new structure.  The improvement, however, in opening the side streets, should still be kept in mind.  In estimating the award an intricate question of fact was presented, it being necessary to determine the excess of damage caused by the new structure, deducting the benefit derived from improvements; and with the conclusion reached as to the amount we do not think we should interfere.

The record shows that the court below approached the consideration of these questions of damages, having in mind the correct legal theory upon which they should be disposed of; and the amounts awarded being, on the evidence, fair and just, we think the judgment should be affirmed, and, as these were cross appeals, without costs.  All concur, except VAN BRUNT, P. J., dissenting.

VAN BRUNT, P. J.  I do not concur in the prevailing opinion. It seems to me that the evidence entirely fails to show that the plaintiff has sustained any permanent damage by reason of the new erection upon which the railroad is now run.  The structure existing at the time of the change, it seems to me, is shown to have

been a greater detriment to the premises of the plaintiff than the present structure, and consequently no damages have been sustained.