the emergency which excited other requirements, in the exercise of the judicial discretion confided to the trustees acting in the interest of the public. Such a principle would also determine that, even if the village trustees waived the obligation of the railway company, that company could prevent by law the interruption of its business through the digging up of the street and putting in another pavement suitable to the conditions necessary, even though done at the expense of the village. But the remainder of the condition agreed to provided that the space referred to should at all times be kept paved in such manner as made a good condition. It may very easily be presumed, from the lapse of 17 years, such a condition of pavement required other than small stone, and that neither of the parties expected or intended that the particular kind of material then to be used, with horse cars running, and, perhaps, a small amount of business transacted in the village, was preserved by choice then made and operative forever. Would the street railway company maintain a different position if it found the use of small stone derogatory to its capacity to conveniently receive passengers and propel its cars by electric power? The right of our legislature, preserved by the constitution, to regulate the reasonable use of corporate privileges, does not violate the provision of the federal constitution forbidding the impairment of the obligation of contracts. Every corporation takes its right even to exist subject to this power of the legislature, and certainly do those who ask for and receive from the legislature the privilege of limited responsibility, and the right to take property against the will of the owner, within the shield of corporate action. And certainly the act of 1901, in reaffirming contracts, does not add to the advantages of the corporation by giving to it more than does the contract itself, and the implied understanding upon which it was based originally conferred.

Judgment is directed for the plaintiff for $1,209, and interest from December 1, 1899, besides costs.

Judgment for plaintiff, with costs.

---

(35 Misc. Rep. 497.)

### CAMPBELL v. NEW YORK & H. R. CO. et al.

(Supreme Court, Special Term, New York County. July, 1901.)

1. MUNICIPAL CORPORATIONS—STREETS—STEAM RAILROAD — EASEMENT DAMAGES.

 Where the owner of property abutting Park avenue in the city of New York owned the property since 1884, and neither she nor any prior owner of the premises before 1897 had ever definitely interfered with the user of the street by defendant railroad company.before 1897, she was only entitled to recover from defendant easement damages suffered by the railroad increasing the height of the viaduct erected in the street from the beginning of the use of the temporary structure, and this though the first owner in her chain of title conveyed to the railroad for railroad purposes only a 24-foot strip in the avenue, and the railroad subsequently widened its viaduct to 59 feet; it appearing that such owner had previously conveyed the whole avenue in front of his premises to the city.

 71 N.Y.S.—70

**2. EASEMENTS—USER—INTERFERENCE—SUIT—DISCONTINUANCE—EFFECT.**

    A suit begun by the owner of property abutting a street partly occupied by a railroad, to restrain an unlawful user of the street by the railroad company, which suit was discontinued, is not a disturbance of the railroad's user as then established sufficient to break it.

**3. INCREASED TRAFFIC.**

    Where the owner of property abutting a street partly occupied by a steam railway company owned the property since 1884, and did no act sufficient to break the railroad's user before 1897, the practical location of the use by the railroad company, established by such acquiescence, so far as such owner is concerned, concludes her as to damages previously accruing, though the growth of business may have greatly increased the traffic over the street as the railroad used it at the time.

Suit by Bridget Campbell against the New York & Harlem Railroad Company and others for damages and for injunction restraining defendants from using a street abutting plaintiff's property for railroad purposes. Judgment for plaintiff.

Bushby & Berkiley, for plaintiff.

Ira A. Place (C. C. Paulding and Thomas Emory, of counsel), for defendants.

RUSSELL, J. The plaintiff brings the usual action for damages and injunction on account of the erection of the viaduct in Park avenue, New York City, and the passage of trains to the number of some 500 per day in front of her premises No. 1,487, situated between One Hundred and Eighth and One Hundred and Ninth streets, on the easterly side of Park avenue. Her lot is about 27 feet front and 76 feet deep. She has thereon a four-story brick building used for tenement lettings. The plaintiff claims by sundry mesne conveyances from Benjamin L. Benson, who deeded to Harriet M. Wiswall June 2, 1835, by conveyance recorded June 10, 1835. She received her title from John Hickey by deed dated April 1, 1884. No interference by the plaintiff or her predecessors in title with the user by the railroad company has been shown until this action, which was begun July 26, 1897, except a suit commenced by the plaintiff in 1891, which was discontinued. In 1825 Benson conveyed the street to the city, reserving trees, buildings, and improvements. In 1832 he conveyed to the Harlem Railroad Company, for railroad purposes, a strip 24 feet wide, with a right to slope the embankments. This deed was recorded August 18, 1835. In 1848 trains were running on Park avenue, and in 1855 the railroad company used a viaduct between 24 and 27 feet wide, with slopes, running its cars then as far down as the city hall. From 1872 to 1875 the viaduct structure was widened to 59 feet. That new structure was so far completed that trains passed over it in the year 1875. In pursuance of the mandatory authority of the United States government and an act of the legislature of the state of New York, and under the constructing agency of an independent board, the viaduct was raised over six feet in front of plaintiff's building, changing the stone form of the structure to one of steel, leaving the space under the railroad bed freer to the passage of vehicles and the public than before. The change occupied about three years from 1894 to 1897, the railroad using a

temporary structure, furnished by the same board which constructed the new viaduct. During the past 10 years the rental values of the plaintiff's premises have diminished to some extent. The principal cause of that diminution, so far as it has been occasioned by the railroad uses, has been the increase of traffic, necessitating a greater number and size of the trains. The difference between the height of the viaduct as it now stands and as it was before 1894 has not severely affected the plaintiff's property, especially when we take into consideration the increased facility of access from the opening of the structure below the bed of the railroad.

I cannot assent to the claim now made by the plaintiff that her right of recovery goes back for six years prior to the commencement of the action, on the theory that the defendants never acquired, by grant or prescription, any right to use more than 24 feet space in Park avenue. The application of the doctrine of adverse possession and practical location bears with more or less force, according to the situation and user of the easement claimed. It is one thing to establish by location or hostile possession the right to the exclusive use of a lot of land, and a very different thing to maintain a limited use of a public street, which has always been assented to by the city, and the extended use of which is commanded by law and the action of the city itself. The lines of the user are not drawn with mathematical precision, like the boundaries of a tract of land, and, when a street is dedicated partly to the uses of the traveling public, even by conveyances, managed by a private corporation, the number of passengers carried and the number of trains propelled through the street are not definitely fixed, but vary or increase with the necessities for the proper use of the implied grant or acquiescence. This conception of what an easement to carry people through a public street may mean does not at all extend to the right of materially increasing the size of the obstruction, but simply allows the structure to be used for its fullest capacity, so far as the right to maintain that structure has sprung up from direct grant, or grown into full life by the silent assent of those interested in prevention. In the present case user was acquired by the defendants of the structure as it was prior to 1872, and of the enlarged structure from 1875 to 1897. I cannot hold that the abandoned suit of 1891 is such a disturbance of that user as to justify the claim that the use was broken. The discontinuance is as forceful as the commencement of the action. It was an admission that that action was not maintainable, and such inference cannot be rebutted by the commencement of a later action; for the earlier suit could have brought within its scope the right to damages from 1885, which were waived by the discontinuance. The only proof, also, of this 1891 action is the affirmative defense in the defendants' answer here, which cannot be entirely correct as to the cause of action being the same, because the new viaduct was not started until 1894. The doctrine of practical location also assists very materially in determining the assent to the user from 1875 on the part of one who purchased in 1884, and who rested quietly until 1891. Practical location does not depend upon the exact number of years, but aids in the inferences of assent; especially in a case where

the disturbance was daily, and was not in the nature of any interference with the plaintiff's premises, except in the incidental benefits, which may have been deemed wholly compensated for by the more speedy access afforded by the use of the street for railroad purposes to those premises so far distant from that part of the city devoted especially to business purposes. This doctrine of practical location is not the same as adverse possession. Katz v. Kaiser, 154 N. Y. 295, 48 N. E. 532; Reed v. Farr, 35 N. Y. 113.

The legal principles applicable to this case have been mainly settled by the appellate division of the supreme court and the court of appeals. The case of Taylor v. Railroad Co., 27 App. Div. 190, 50 N. Y. Supp. 697, was decided before the case of Lewis v. Same, 162 N. Y. 203, 56 N. E. 540. In the Taylor Case it was held that the abutter could not recover damages on account of the original permanent embankment existing before 1894. In the Lewis Case the court of appeals decided that the railroad company had a right to maintain that viaduct forever, within the same limits, and at the same height and to the extent of the user, and that the use of the temporary structure from 1894 to 1897 gave a right to damages suffered from the increased height; deducting, however, the benefits from the increased facilities of access. The latter case was followed by the appellate division in Fries v. Railroad Co., 57 App. Div. 577, 68 N. Y. Supp. 670, and in Sander v. Same, 58 App. Div. 622, 69 N. Y. Supp. 155.

Limiting, therefore, the recovery for the period beginning with the use of the temporary structure, I award $1,250 for rental damages and $1,500 for fee damages. Let the usual provision be made for an injunction, unless the damages are paid within a stated time. The plaintiff is also entitled to costs.

Ordered accordingly.